##### IN THE

## SUPREME COURT OF JUDICATURE

##### OF THE

## STATE OF NEW-YORK,

IN OCTOBER TERM, 1833, IN THE FIFTY-EIGHTH YEAR OF OUR INDEPENDENCE.

---

## VAN RENSSELAER *vs.* RADCLIFF.

Common of *estovers* cannot be apportioned. Where a farm entitled to esto-
vers is divided *by the act of the party* among several tenants, neither of them
can take estovers; they belong to the whole farm as an *entirety*, and not to
parts of it; and as the owner of no one portion of the farm entitled to com-
mon, can enjoy the right, it is necessarily *extinguished* and can be revived
only by a *new grant.*

Where common of estovers *by operation of law*, as by descent, devolves upon
several, they cannot enjoy the right in severalty, but may unite in a con-
veyance and vest the right in one individual.

Common of *pasture*, whether *appendant* or *appurtenant*, it seems is apportiona-
ble.

If a commoner purchase a part of the lands, out of which the common is to
be taken, the right of common is lost.

The owner of a *manor*, who grants leases conferring rights of common, may
*appropriate* portions of the waste lands of the manor, provided he leaves
enough for his tenants; but such appropriation must be an actual *bona fide*
appropriation, not a mere enclosure of the waste lands by what is common-
ly called a possession fence. No one, however, but a tenant can question
the *bona fides* of the appropriation.

A party having *title* to lands, although not in the actual possession thereof,
may maintain *trespass* against another not in the actual possession of the
premises.

ERROR from the Albany common pleas. *Stephen Van Rensse-
laer, jun.* sued *Jacob I. Radcliff,* in an action of *trespass* for enter-
ing a certain close in the town of *Guilderland,* called the black

swamp, describing it by metes and bounds, and cutting and carrying away timber. The defendant pleaded the general issue, and accompanied the same with notice of special matter. On the trial the plaintiff produced in evidence a lease from *Stephen Van Rensselaer, proprietor of the manor of Rensselaerwyck* to him, bearing date 1st November, 1819, demising *all the unappropriated lands* in the towns of Rensselaerville, Bern, *Guilderland* and Bethlehem, in the county of Albany, not theretofore granted or conveyed to any other person or persons, and proved the cutting of 300 or 400 rails in the *locus in quo* by the defendant in February or March, 1830, and the value of the same. The defendant then produced in evidence a lease in fee from *Stephen Van Rensselaer, lord and proprietor of the manor of Rensselaerwyck,* to Jacob Truax, bearing date 4th September, 1769, granting a farm situate in the said manor, (particularly describing it), and which it was conceded on the trial, is in the now town of *Guilderland, "containing* 181 *acres, together with free liberty for out-drift of cattle, and cutting and carrying away of timber for building, fencing and fuel in the unappropriated lands of the said manor, for the use of the said hereby released lands only,"* saving and reserving all *mines* and *streams of water,* and as much land out of the described premises as the grantor or his heirs might at any time *appropriate,* by the erection of mills, mill-dams, and of buildings for the working of mines, and by digging for ore, &c. ; which grant was subject to the condition of the payment of an annual rent of 30 bushels of wheat, besides certain services, &c. The following facts were also shewn : On the 15th December, 1769, *Jacob Truax* conveyed 98 acres of the farm granted to him, to his son *Andrew Truax,* and 83 acres, the residue of the farm, to his son *John Truax,* each deed containing these words : " together with the rights, members and appurtenances thereof, and all houses, edifices, profits, advantages, emoluments, and hereditaments to the same belonging or appertaining." On the 24th June, 1815, *Andrew Truax* conveyed his 98 acres to *John Tayler,* " together with free liberty of out-drift of cattle, and cutting and carrying away of timber for building, fencing, and fuel for the use of the said premises, in the unappropriated lands of the manor of Rensselaerwyck, agree-

ably to the lease from Stephen Van Rensselaer to Jacob Truax, bearing date 4th September, 1769, together with all and singular the appurtenances, privileges and advantges unto the said premises belonging or appertaining." *John Truax*, by will, bearing date 19th September, 1795, devised all the real estate whereof he should die seised, to his wife Annatie, who, on the 2d July, 1802, conveyed the 83 acres granted to her husband, to Jeremiah Van Rensselaer, from whom, by sundry mesne conveyances, this portion of the farm came to *John Tayler* on the 8th July, 1818, it being granted to him with " all the privileges and advantages to the same belonging and appertaining." *John Tayler*, by his last will and testament, bearing date 10th March, 1827, devised all his real estate to *Margaret*, the wife of *Charles D. Cooper;* and on the 1st April, 1829, Charles D. Cooper and Margaret his wife demised the farm originally granted to Jacob Truax, to *Robert Hirst*, for the term of one year, under whom, and by whose authority, and by the licence of Charles D. Cooper, the defendant cut the rails in question, *which were used in making and repairing the fences on the said farm*, and were necessary for that purpose. It was proved that shortly after the purchase by John Tayler of the farm originally leased to Jacob Truax, the landlord Stephen Van Rensselaer knew of his purchase and accepted him as his tenant of that farm ; that from 1815 to 1829, (the time of his death) John Tayler paid the rents of the farm, and performed the services required by the original lease, and that since his death, the rents have been paid by Charles D. Cooper. It was also proved, that the *locus in quo* was not enclosed by a substantial fence or enclosure, but only by a *possession fence* which was not sufficient to turn cattle or teams. The testimony on the part of the defendant being closed, the plaintiff produced in evidence a lease in fee from *Stephen Van Rensselaer, proprietor of the manor of Rensselaerwyck*, to *John Truax*, of 58½ acres of land situate in the now town of Guilderland, bearing date in September, 1791, and reserving an annual rent of six bushels of winter wheat ; and proved that *John Tayler*, previous to his death, claimed to be the owner of the said 58½ acres, was en-

tered on the books of the landlord as the tenant of the same, and paid the rent thereof.

The evidence being closed, the defendant insisted that he was entitled to a verdict; to which the plaintiff objected, for the following reasons: 1. That neither the conveyances from Jacob Truax to his sons, Andrew and John, nor any of the subsequent conveyances by which John Tayler derived title, contained *an express grant of the right of common,* and that such right could not pass except by express words; 2. That the *right of common* granted by the original lease, was for the farm thereby conveyed as an entirety only, and that such right was not susceptible of being assigned to different lessees at the same time; 3. That by the terms of the grant of the right of common to Jacob Truax, the right to make *future appropriations* was reserved to the lord of the manor, and the *lease to the plaintiff* was an appropriation within the meaning of the grant; 4. That John Tayler having become the owner of the *farm leased to John Truax in* 1791, which was part of the lands of the manor unappropriated in 1769, the whole right of common as to him and those claiming under him, was extinguished; and 5. That there being no covenants in the original lease of 1769 on the part of the grantor, neither he nor his heirs or assigns were bound to retain a sufficiency of common. The court overruled these several objections and gave their opinion to the jury that the defendant was entitled to a verdict; to which opinion and direction the plaintiff excepted. The jury found for the defendant, and judgment was entered in his favor. The plaintiff sued out a writ of error.

*J. T. B. Van Vechten,* for the plaintiff. The right of common of *estovers* granted by the lease to Jacob Truax in 1769, was a right *appurtenant,* which could not be *apportioned,* and which became *extinguished* by the conveyance of the farm in *separate parcels* to the sons of the lessee. To show the distinction between common *appendant* and common *appurtenant,* the counsel cited 2*Inst.* 85 a.; 4 *Co.* 37; *Co. Litt.* 121, 122; *Musgrove* v. *Cave, Willes' R.* 322; *Wild's case,* 8 *Co.* 78; that common of *estovers* cannot be apportioned or enlarged, he cit-

ed *Co. Litt.* 164, *c.* ; *Cruise Dig. tit.* 23, § 37 ; *Finch's L. book* 2, *ch.* 9, *p.* 158 ; *Co. Litt.* 147, 148 *a.* ; 2 *Fitzh. N. B.* 180, *h.* ; *Luttrell's case,* 4 *Co.* 86 ; 5 *Petersdorff,* 586, 610, § 4 ; 11 *Johns. R.* 15 ; *Willes,* 230 ; 11 *Johns. R.* 495 ; 16 *id.* 15 ; 16 *id.* 30 ; and that severance of an *entirety,* such as common of estovers is, by act of the parties and sometimes by operation of law works an extinguishment of the whole, he cited *Knight* v. *Buck,* 1 *And.* 175, *in* 11 *Viner, tit. Extinguishment, pl.* 4 ; *Bruerton's case,* 6 *Co.* 1 ; 3 *Leon.* 13, *Anon.* ; *Wiseman* v. *Wallinger, Godbolt, p.* 95, *pl.* 107 ; *Viner, tit. Apportionment, c. pl.* 7, 8 ; 3 *Cruise, tit.* 28, *ch.* 3, § 13 *to* 17, 28 ; and *Plowden,* 381. The counsel remarked that in the case of *Livingston* v. *Ten Broeck,* 16 *Johns. R.* 15, Chief Justice Spencer advanced the position that *common appurtenant can be apportioned,* but on looking into the cases referred to by the chief justice, he said it would be found that they related to common of *pasture,* and not to common of *estovers.* The counsel also insisted that the terms of the grant of 1769, secured to the lord of the manor the right to make *future appropriations,* and that *the lease to the plaintiff* was an appropriation within the meaning of the grant; in support of which position he cited 3 *Kent's Comm.* 323 *to* 326 ; *Glover* v. *Lane,* 3 *T. R.* 445 ; and *Arlett* v. *Ellis,* 7 *Barn. & Cres.* 364. He also insisted that *John Tayler,* under whom the defendant claimed, having purchased the farm leased to John Truax in 1791, which he contended was a part of the lands of the manor unappropriated in 1769, the whole right of common as to John Tayler and those claiming under him, was extinguished ; in support of which position, he cited *Tyrringham's case,* 4. *Co.* 36 ; 16 *Johns. R.* 26 ; *Cruise Dig. tit.* 23, § 75 *to* 83 ; and *Wild's case,* 8 *Co.* 78.

*R. J. Hilton,* for defendant, conceded that *common of estovers* is of the species of commons denominated *appurtenant,* but insisted that it may be apportioned ; he cited *Livingston* v. *Ten Broeck,* 16 *Johns. R.* 15 ; *Co. Litt.* 122, *b.* ; *Cro. Car.* 482 ; 8 *Co.* 156 ; *Hobart,* 235 ; 5 *Viner,* 17, *pl.* 19 ; 2 *Black. Comm.* 33 ; that here the right of common of estovers was created by express grant, and that all the subsequent conveyances contain apt words to pass the right, the word *appurtenances* be-

ing found in each grant, under which *common of estovers* will pass, *Jacob's L. D.*; *Touchstone, tit. Grant & Common*, 229, 231; that the acceptance of John Tayler, as the tenant of the premises originally granted to Jacob Truax in 1769, and receiving rent from him for the same, from 1815 to 1829, was a waiver of any rights before then forfeited, and a confirmation of the grant originally made, 2 *T. R.* 431; *Cro. Eliz.* 230; *Woodfall's Landlord & Tenant*, 151, 152; that the right of common of estovers was not *extinguished* by the severance of the premises into two parcels, by the conveyance thereof to the two sons of the orignal lessee, but merely *suspended*, and that on the union of the two parcels in John Tayler, the acceptance of him as the tenant of the whole premises was equivalent to a renewal of the original lease, revesting in the tenant of the whole farm the enjoyment of the *common of estovers*, as an entirety and appurtenant to the whole farm; that John Tayler having in 1818 become the owner of the whole farm, was entitled to common of estovers in the unappropriated lands of the manor, and the lord of the manor had no right by statute or at common law to enclose or appropriate the wastes of the manor, *Comyn's Dig. tit. Common*, 2 *T. R.* 391; and should it be conceded, that he might enclose the waste land, leaving enough for the commons granted to his tenants, he could not, as was attempted in this case, convey away *all the unappropriated lands* of the manor, and that not by transfer for a valuable consideration, or by lease to tenants for the purposes of husbandry, but to a son for the manifest purpose of depriving the tenants of the manor of their rights of common. He further insisted that nothing is to be inferred against the defendant from the evidence adduced by the plaintiff, that John Tayler, previous to his death, was the owner of the 58½ acres granted to John Truax in 1791, there being no proof that those lands were unappropriated in 1769; if they were improved lands, the right of common of Tayler was not extinguished by the purchase, for the improvement was the act of the lord, and by it the lands were severed from the waste lands of the manor. 2 *Inst.* 87. He also contended that the plaintiff was not entitled to recover, not having shewn himself in the *actual possession* of the *locus in quo*.

*B. F. Butler*, in reply, said that the right of common claimed in this case, was common *appurtenant* and not common *appendant;* that though in common parlance there would seem to be no distinction, and the old books recognized none between those two species of common, they had inaccurately omitted to do so, as was clearly shewn by Chief Justice Willes, in *Bennett* v. *Reeve, Willes' R.* 232. *Common appendant* is a right annexed to the possession of *arable* land, and includes common of *pasture*, but not common of *estovers*. *Common appurtenant* is created by grant or prescription, and may be annexed to any kind of land, whether arable or not. The first is favored because of common right; the latter not, because against common right. 4 *Co.* 36 *b.*, 37. 8 *Co.* 78. This, then, is a case of common appurtenant and common appurtenant of *estovers*, which is always granted as an *entirety*, and must be so of necessity. *Co. Litt.* 164, *b.* *Estovers* are so entire that they cannot be divided even among parceners. *Finch's L.* book 2, ch. 9, *p.* 158. A thing granted as an entirety, which can only be enjoyed as such, cannot be apportioned by act of the parties, though it may by operation of law. If estovers could be apportioned, they might be apportioned to an indefinite extent, and be ruinous to the landlord, but the law is settled that common of estovers cannot be enlarged, not even by the erection of an additional chimney in the dwelling house of the tenant. *Fitzh. N. B.* 180. In *Watts* v. *Coffin*, 11 *Johns. R.* 495, the question presented in this case might have been agitated, but it was neither disputed by counsel nor decided by the court; in *Springstein* v. *Schermerhorn*, 12 *Johns. R.* 357, the question did arise, but the case was decided on a different point; in *Livingston* v. *Ten Broeck*, 16 *Johns. R.* 14, the question whether *common appurtenant* may be *apportioned* was discussed and an opinion was pronounced by Chief Justice Spencer in the affirmative, but the decision of the case did not turn upon the application of the principle thus sanctioned. In the opinion delivered, *common appurtenant* and *common in gross* were spoken of as synonymous, which is clearly wrong; the latter existing where there is a grant of common without lands, and the former always being annexed to lands. The learned chief justice also said, that com-

ALBANY,
Oct. 1833.

Van Rensselaer
v.
Radcliff.

ALBANY,
Oct. 1833.

Van Rensse-
laer
v.
Radcliff.

mon appurtenant can be apportioned, and cited the cases now relied on by the counsel for the defendant ; but they do not support him ; they prove that common of pasture may be apportioned, but not *common of estovers.* 1 *Saund.* 342, *n.* 2. *Common of pasture* may be apportioned, because the landlord does not thereby sustain any injury : as many cattle as are *levant* and *couchant*, i. e. supported on the farm through the winter, are commonable, and whether belonging to one person or to twenty, is a matter of indifference to the landlord. Not so as to *common of estovers ;* they are an *entirety*, and must be enjoyed as such. There is not a *dictum* to the contrary. What is said in *Livingston* v. *Ten Broeck*, that common appurtenant can be apportioned, is true as to every species of common except *common of estovers*, but that is an exception ; that common of *estovers* are an entirety and must be enjoyed as such, was adjudged in the same term in which *Livingston* v. *Ten Broeck* was decided, viz. in the case of *Leyman* v. *Abeel*, 16 *Johns. R.* 30. When, therefore, the entirety of the right of common of estovers was severed, by the conveyance of one portion of the farm to one son of the grantee, and another portion to another son, the whole became extinguished, as neither of them could enjoy the right as an entirety. When a party does what he ought not to do— makes a severance of an entirety—he forfeits his right, and though such forfeiture operates beneficially to the landlord, it is upon the principle that *common appurtenant* being against common right is not to be favored.

If a right of common of estovers existed in John Tayler, by the acquisition of the several parcels of the farm conveyed to the sons of the original grantee, it was extinguished by his becoming the owner of the 58½ acres granted to John Truax in 1791, the premises so granted being part of the lands of the manor *unappropriated* in 1769, when the original lease was granted. By the unity of title in one and the same person of land entitled to common, and of part of the land out of which common is to be taken, the right of common is extinguished. *Tyrringham's case*, 4 *Co.* 36, recognised in *Livingston* v. *Ten Broeck*, 16 *Johns. R.* 26, 27. It is not material at what time John Tayler acquired title to the dif-

ferent portions of the land; if at the time of the trespass the unity of title existed in those who claim under him, the right to *estovers* was gone.

The right of the landlord to make *appropriations* of the lands in his manor *unappropriated* at the time of any specific grant made by him, does not depend upon the *English* statutes of *Merton* and *Westminster* 2, but upon the terms of the grant. These statutes form no part of the common law, and were never in force here; besides, they relate only to common of *pasture* and not to common of *estovers*. A grant giving common of estovers should be so construed as to give the right of estovers in lands, which should from time to time remain unappropriated; not in all the lands of a manor which were unappropriated at the time of the grant, for such latter construction would be unreasonable and against public policy. 3 *Kent's Com.* 322. If the lease to the plaintiff was not an *approvement* within the meaning of the old law, it was an *appropriation*, a taking of the land by the landlord or a giving of it to another; and such appropriation is not to be tested by the rules which determined the validity of an approvement or improvement, as whether the land was enclosed for the purpose of actual occupancy or not; but the only enquiry is, whether the landlord has appropriated to his own use, or to the use of another, lands which were before unappropriated.

If the defendant, or those under whom he claims, were not entitled to *estovers*, the right of the plaintiff to maintain the action cannot be questioned by the defendant. Having the title, the law casts the possession upon the plaintiff, and he may maintain the action against a wrongdoer without showing an actual possession in himself. 7 *Barn. & Cres.* 364.

*By the Court*, SAVAGE, Ch. J. Common or a right of common, is a right or privilege which several persons have to the produce of the lands or waters of another. Thus, *common of pasture* is a right of feeding the beasts of one person on the lands of another; *common of estovers* is the right a tenant has of taking necessary wood and timber from the woods of the lord for fuel, fencing, &c.; *common of turbary* and *piscary* are in like manner rights which tenants have to cut turf or

take fish in the grounds or waters of the lord. All these rights of common were originally intended for the benefit of agriculture, and for the support of the families and cattle of the cultivators of the soil. They are in general either *appendant* or *appurtenant* to houses and lands. There is much learning in the books relative to the creation, apportionment, suspension and extinguishment of these rights, which fortunately in this country we have but little occasion to explain; but few manors exist among us as remnants of aristocracy not yet entirely eradicated. These common rights which were at one time thought to be essential to the prosperity of agriculture, subsequent experience, even in *England*, has shown to be prejudicial. In this country such rights are uncongenial with the genius of our government, and with the spirit of independence which animates our cultivators of the soil. In our state, however, we have the manors of *Livingston* and of *Rensselaerwyck*, in which these rights have existed, and to some extent do still exist, and we are obliged therefore to look into the doctrine of commons to ascertain the rights of parties and do justice between them.

*Common of pasture* is the principal of these rights, and therefore most of the cases found in the books relate to that species of common. This was *appendant, appurtenant, in gross*, or *because of vicinage*; of the last I shall take no notice, because it is not applicable to *estovers*. *Common appendant* is a right annexed to the possession of arable land, by which the owner is entitled to feed his beasts on the lands of another, usually of the owner of the manor of which the lands entitled to common are a part. This kind of common must have existed from time immemorial, and can be claimed by prescription only, and is confined to such and so many cattle as are necessary to plough and manure the land which is entitled to common, and which are *levant* and *couchant*, that is, so many as the land will sustain during the winter. *Common appurtenant* does not necessarily arise from any connection of tenure, but must be claimed by grant or prescription. It may be created by grant and may be annexed to any kind of land, whether arable or not. *Common in gross* has no relation to the tenure

of land, but is annexed by deed or prescription to a man's person.

Common of *estovers* must, I apprehend, be either *appendant* or *appurtenant*; they are necessarily incident either to houses or lands. This right of common may exist by prescription and is then appendant, or be specially granted, and then it becomes appurtenant. 3 *Cruise Dig.* 83 to 90. 3 *Black. Comm.* 33, 34. Whether this kind of common is *apportionable* is the principal question in this case. It seems to have been doubted heretofore whether common of pasture was apportionable, and we find the subject elucidated by Chief Justice Willes in *Bennett* v. *Reave, Willes,* 227, as late as the year 1740. He says common of pasture appendant may be apportioned; for as the land is entitled to common only for such cattle as are necessary to plough or manure the land, the common cannot be surcharged by any number of divisions or subdivisions in consequence of alienation. It had been contended in that case, that the owner of every parcel, even a yard, was entitled to common for beasts of the plough as well as other cattle, on the assumed ground that the tenant was bound to plough the lord's land, and therefore must have a team, and of course must have them pastured; but it was clearly shewn that the team entitled to pasture was such as was necessary for ploughing the land entitled to common, and it made no difference into how many hands it went; no more team was necessary for ploughing, and no more cattle necessary for manuring. Such common is apportionable, and the common being incident to the land, passed with it in such proportions as the land should be divided into; the assignee of half, for instance, of the land, was entitled to half the right of common. This case was of common appendant, and of this kind of common, of pasture, it is said, it is apportionable either when part is purchased by the lord or any other person. Common appurtenant of pasture is also apportionable by alienation of part of the land, but not if the person entitled to it purchases part of the land out of which the common is to be had, 3 *Cruise,* 92, 3; *Co. Litt.* 122, a.; and the reason assigned is because common appurtenant is against common right, whereas common appendant is of common right. 4 *Co.* 36. 8 *Co.* 78.

The authorities also inform us that *common of estovers* cannot be apportioned. Lord Coke says, " If a man have reasonable estovers, as housebote, &c. appendant to his freehold, they are so entire that they shall not be divided between coparceners." *Co. Litt.* 164, *b.* 3 *Cruise,* 93. *Lord Mountjoy's case* is there stated, which was that of common of *turbary,* and it was resolved that he could not assign his interest to one or more, for that might work a prejudice and surcharge to the tenant of the land, and therefore if such an inheritance descended to parceners, it cannot be divided. In *Luttrel's case,* 4 *Co.* 87, Lord Coke says, " So if a man has estovers by grant or prescription to his house, although he alters the rooms and chambers of this house, as to make a parlor where it was the hall, or the hall where the parlor was, and the like alterations of the qualities and not of the house itself, and without making new chimnies, by which no prejudice accrues to the owner of the wood, it is not any destruction of the prescription, for then many prescriptions will be destroyed ; and although he builds a new chimney or makes a new addition to his old house, by *that* he shall not loose his prescription, but he cannot employ or spend any of his estovers in the new chimnies, or in the part newly added." 3 *Cruise,* 89. Estovers appurtenant to an house cannot be separated from the house, but must be spent on the house. 3 *Cruise,* 89. *Plowd.* 382. These authorities seem to be express that common of estovers cannot be apportioned, and for the reason that thereby the land out of which the estovers are to be taken would be surcharged. If, for instance, estovers are granted as belonging to a farm of 200 acres, so long as this is one farm, there is but one house and probably not more than two chimnies ; but if this farm is divided into two, another house becomes necessary, and double the number of chimnies must be supplied. This would be an injury to the lord. So also of fences and buildings ; by dividing the farm into two, more fences and buildings become necessary, and if both are to be supplied from the woods of the lord, an increased quantity would be taken, where, by the grant itself, only estovers for one farm were allowed. As these estovers cannot be apportioned, neither of the tenants among whom the farm is divided can have them,

and therefore they become extinguished.　Common of esto-
vers must be considered as an entire thing, not to be divided ;
and in case of a common person, if an entire thing be divided
or extinguished in part by the act of the party, it is an extin-
guishment of the whole ; but otherwise where it is by the act
of God or the law.　11 *Vin.* 467, *pl.* 4, *tit. Extinguishment, P.*
6 *Co.* 1, *Bruerton's case.*　4 *Co.* 38, *Tyrringham's case.*　Lord
Coke also says, " If a man have reasonable estovers, as house-
bote, heybote, &c. appendant to his freehold, they are so en-
tire as they shall not be divided between coparceners."　*Co.
Litt.* 164, *b.*　In answer to the question, what shall become of
such inheritances ?　he says it appears by the books that the
eldest shall have them, and the others a contribution ; but if
no other property descended from which contribution could be
had, then the parceners should have alternate enjoyment, or,
in case of *piscary,* one shall have the first fish and another the
second ; and so of a toll-dish, where the hereditament was
the *toll of a mill.*　If, however, that doctrine were applicable
here, it would only relate to descents, not alienation by deed ;
and even as to descents, it has been held that one of several
heirs, to whom a right of estovers descended, could not alien
his share so as to authorize the assignee to enter and cut
wood.　*Leyman* v. *Abeel,* 16 *Johns. R.* 30.　This case of *Ley-
man* v. *Abeel* recognizes the doctrine which I have advanced,
that estovers are not apportionable.　There one of the propri-
etors of the Catskill patent devised certain lands to his two
sons, and gave each an undivided moiety of his right in the
undivided lands ; he also devised portions of lands to each of
his three daughters and to a grand daughter.　He then gave
to each of his children liberty of cutting wood and taking
stone from any of his undivided lands in common forever.
The land subject to common became the property of the
plaintiff.　One of the five children of the proprietor, Nelly
Abeel, died in 1809, leaving four children, one of whom con-
veyed his right to cut wood and carry away stone to the de-
fendant, who did cut and carry away five loads of wood, for
which the suit was brought.　It was held that the right of
Nelly Abeel descended to all her children, but that the right
to cut wood, although descendible and alienable, could not be
enlarged so as to defeat the intention of the devisor, by impart-

ALBANY,
Oct. 1833.

Van Rensse-
laer
v.
Radcliff.

ing the entire right to be enjoyed by each; that one could not alone convey any right—of course one alone had no right to cut wood; but from this case it would follow, that as the right was an entirety and had devolved by *operation of law* upon four, although they could not enjoy it severally, they might jointly convey it to one who might enjoy it in severalty as an entirety. It follows also from the doctrine of this case that the owner of such a right cannot divide it, i. e. *by the act of the party;* if he conveys part of the lands entitled to common, granting the right, it cannot be enjoyed. The common belongs to the whole farm as an entirety, not to parts of it. This would enlarge the right to the prejudice of the land out of which the common was to be taken. As no one portion of the land entitled to the common could enjoy it, it is necessarily extinguished; and being extinguished, it cannot be revived only by a new grant. It is contended by the counsel for the defendant in error, that the case of *Livingston* v. *Ten Broeck,* 16 *Johns. R.* 14, contains a contrary doctrine. It was conceded that the question of extinguishment did not arise in that case, but the learned judge who gave the opinion of the court does say that common appurtenant can be apportioned, and he refers to several cases as sustaining the position—all of which cases are cases of common of pasture.

It will be seen, by applying these principles to this case, that Jacob Truax was entitled to common; but when he conveyed his farm, on the 15th December, 1769, part to one son and part to another, thereby creating two farms out of the one entitled to common, such right being an entirety, not being apportionable, could not be enjoyed by either, and of course was extinguished. This is the main point in the case, and is decisive of it.

Several other questions were raised and discussed; such as whether the lord had a right to enclose any part of the common; and if so, whether the lease in the present case was such an improvement as would exempt the *locus in quo* from being subject to the right of common; and whether the plaintiff had such a possession as would entitle him to maintain trespass; which questions I will notice, but not discuss at large. 1. The possession of the plaintiff was sufficient against

a stranger; he shewed title to lands which were not in the actual possession of any other; he was therefore in possession, as in such cases the possession follows the title. 2. There is no doubt that the lord has a right to improve his waste lands, provided he leaves enough for those who are entitled to common. There can be as little doubt, I think, that the improvement, to bar a common, must be an actual *bona fide* improvement; not a mere possession fence, run round a piece of woods. But as I hold the right of estovers in this case was gone, the defendant and those whose estate he represents have no right to raise that question; they are mere strangers, and as against such the plaintiff's title and possession were sufficient.

The law is established in England and recognized in the case of *Livingston* v. *Ten Broeck*, that if the commoner purchases part of the land subject to common, if the right of common be apportionable, it shall be apportioned, otherwise the whole is extinguished; but that principle seems to be not applicable here. The John Truax farm was purchased by John Tayler in 1791, long before he had any interest in the Jacob Truax farm, which was entitled to common. The ground of that extinguishment is this: that the commoner has voluntarily consented to the diminution of the common out of which his pasture or estovers were to be enjoyed; and where there can be no apportionment, there must be an extinguishment.

Upon the whole case, therefore, I am of opinion, 1. That the plaintiff, as against the defendant, has shewn a sufficient possession of the *locus in quo*; 2. That common of estovers is not apportionable, and of course that though Jacob Truax was entitled to estovers, yet his sons, to whom his farm was conveyed in parcels, and their assigns, never had any such right; and 3. That consequently the defendant was a trespasser in cutting the rails in question, and the plaintiff should have recovered in the court below.

Judgment of the common pleas reversed, with single costs, and a *venire de novo* to issue.