# R. WOODBURY *vs.* E. PARSHLEY.

A licence, or privilege, to be exercised upon land, is not within the statute of frauds ; and may be granted without a contract in writing.

Where A gave to B a parol licence to erect a dam on A's land, for the benefit of both, it was held that after the license had been executed, it could not be revoked without tendering to B the expenses of erecting the dam ; and that if it could be revoked, it would be as much the business of A as of B to remove the dam.

THIS was an action upon the case. The declaration alleged, that the plaintiff was seized of a meadow adjoining Nippo Pond, in Barrington, and that the defendant, by means of a dam by him erected upon his own land, across the outlet of the said pond, caused the water to overflow and injure the meadow, from the 30th August, 1830, to the 19th July, 1832,—when this action was commenced.

The cause was tried upon the general issue, at January term, 1834, when it appeared in evidence, that the dam which caused the injury of which the plaintiff complained, was erected originally in 1827, by the mutual agreement of the plaintiff and defendant : That it afterwards went to decay : That in the spring of 1830 the defendant repaired it, under an expectation that the Cocheco Company would purchase the right to use the water : That the plaintiff

agreed that the defendant might so repair the dam and flow his meadow; and that the defendant agreed to give the plaintiff a part of whatever he might obtain for the use of the water, over and above the cost of repairing the dam. The plaintiff objected to the admission of parol evidence to prove such an agreement; but the evidence was admitted.

Late in the fall of 1830, the plaintiff said to the defendant, that he was not likely to get any thing, and he could not have the water any longer upon his meadow, and that the defendant must take it off. The defendant took off the water, but it did not appear that this was done before the first of February, 1831. It appeared that the meadow was always partially overflowed in the fall, when there was no dam.

The court instructed the jury, that a parol license by the plaintiff was, so long as it continued unrevoked, a good answer to the action: That the plaintiff had a right to revoke the license: That what he said to the defendant, in the fall of 1830, as above stated, was a revocation: That the defendant was bound to take off the water in a reasonable time after the revocation: and that if it was taken off by the defendant before the plaintiff could have sustained any damage in any respect by its remaining upon the meadow, it was taken off in a reasonable time; but otherwise, not.

The jury returned a verdict for the defendant; and the plaintiff moved for a new trial, upon the above case.

*Hale*, for the plaintiff.

*Christie* and *I. Bartlett*, for the defendant.

*By the court.* RICHARDSON, C. J. The first question to be settled in this case, is, whether parol evidence was admissible to prove a licence to flow the plaintiff's meadow?

This question has been settled on sound and satisfactory

principles. It is now held, that the statute of frauds does not apply to a parol agreement for an easement for seven years in the lands of another, such as a right of way, or a privilege of placing goods upon land, or a license to be exercised upon land.

Thus in *Taylor* vs. *Waters*, 7 *Taunton*, 374, it was held, that a license to attend a theatre for twenty-one years might be given without writing. The license is a privilege, to be exercised upon the land, and not an interest in the land.

So in *Webb* vs. *Paternoster*, *Palmer*, 71, a parol licence to lay a stack of hay on land for a reasonable time, was held to be valid.

And in *Winter* vs. *Brockwell*, 8 *East*, 308, a parol license to put a sky-light over the defendant's area, which impeded the light and air from coming to the plaintiff's dwelling-house through a window, was valid.

In *Liggins* vs. *Inge*, 7 *Bingham*, 682, the plaintiff's father, by oral license, permitted the defendant to lower the bank of a river, and make a weir above the plaintiff's mill, whereby less water than before flowed to the plaintiff's mill, it was held that the plaintiff could not sue the defendant for continuing the weir.

There are many other cases on the subject. 11 *Mass. R.* 533; 1 *Cowen* 243; 4 *East* 107; 4 *M. & S.* 562.

In this case, the license gave the defendant no right in the land; it amounted at most only to a privilege to be exercised upon the land.

The evidence was clearly admissible.

But it is said the jury were misdirected.

The dam was erected by the defendant at his own expense, with the assent of the plaintiff, for the benefit of both. For if the water could be sold for more than the expense, the plaintiff was to have his share of the price.

And here the first question is, whether under these circumstances the license was revocable at the will of the plaintiff?

The defendant had incurred expenses in erecting the dam. The license had been executed and acted upon. From the nature of the case, the defendant had a right to maintain the dam until he had had a reasonable time to dispose of the right to the water ; and until such reasonable time had elapsed the license was irrevocable. Certainly the plaintiff could not revoke it without tendering to the defendant the expenses that had been incurred in the project. The law on this point is well settled. 8 *East,* 308, *Winter* vs. *Brockwell ;* 7 *Bingham* 682, *Liggins* vs. *Inge ;* 7 *Taunton* 374, *Taylor* vs. *Waters.*

Whether a reasonable time had elapsed, to give the defendant an opportunity to dispose of the right to the water, need not be decided. For admitting it had, the revocation imposed upon the defendant no obligation to remove the dam. As it had been erected for the benefit of both, a revocation of the license might give the plaintiff a right to enter and remove the obstruction, if it proved injurious to him. 9 *Mass. R.* 316, *Hodges* vs. *Raymond.* But it certainly imposed no duty upon the defendant. He had made no contract to remove the dam, if the water was not sold. The expense of removing the dam ought in justice to fall on all for whose benefit it was erected. On this point, *Liggins* vs. *Inge,* 7 *Bingham* 682, is a direct authority.

It is clear, then, that the action was not in law maintainable upon the facts in the case ; and whether the directions to the jury in other respects were right or wrong, the verdict is right, and there ought to be judgment on the verdict.

*Judgment on the verdict.*