## MILLERD ET AL. *v.* REEVES.

Where on error, a motion to set aside the service of a declaration appeared in the transcript of the record, it was held that it could not be noticed as it was not properly before the court.

In an action for flowing land, an unrevoked parol license, given by a third person who had the right to flow, is a good defence.

R. sued M. for flowing a tract of land, alleging seizin and possession in himself. On the trial the only evidence of title given by R. was possession, for about one year, previous to bringing the action. It further appeared in evidence that previous to, and at the time R. took possession, a part of the tract was flowed by M. *Held*, that by reason of M.'s prior possession, by flowing, of that part of the tract covered with water, at the time R. took possession, that R. could not sustain his action without showing title in himself to the land flowed, or that he entered and took possession of the tract by color of a paper title.

ERROR to Washtenaw Circuit Court. An action on the case was brought by Reeves in the circuit court, against the plaintiffs, in error, for flowing, by means of a dam kept up by them, the north-west quarter of section thirty, town one south of range five east, and the east half of the north-east fractional quarter of section twenty-five, in the same town, in the county of Washtenaw, of which lands the declaration alleged that Reeves was lawfully seized and possessed. On the trial various exceptions were taken, which, with the evidence given and that proposed to be given and rejected, bearing upon the questions decided

are stated in the opinion of the court. The transcript of the record stated the action was commenced by declaration, and that a copy of it, with notice of the rule to plead, was served on defendants by leaving the same at their usual place of abode; that defendants appeared and put in a plea; and that they afterwards moved to set aside the service of the declaration, and all subsequent proceedings, for irregularity in the service.

*Baker, Millerd and Tiffany* for plaintiffs, in error.

*Hawkins,* for defendant in error.

*By the court,* WING, J.   The motion of the plaintiffs in error, to set aside the defendant's declaration, or the service of it, and the several motions subsequently made, though copied into the return, are not brought here by the writ of error, they being mere questions of practice.   The fact that they appear in the transcript, does not give this court any power to notice them.   We can only notice such matters as are properly brought up to this court by the writ of error.

We must regard the plaintiffs in error as having voluntary appeared to the action, and thereby waived all previous errors.

The proof introduced by the defendant in error, tended to show that he had occupied the premises, a year or more, immediately preceding the trial, and that they were flowed by water set back by the dam of the plaintiffs in error.

From the statement of the testimony in the bill of exceptions, it might be inferred the whole premises described in the declaration were flowed; but this doubtless was not the fact, for the defendant occupied a portion of them.

The defendant commenced his occupation of the land in question in the spring of the year 1843, more than a year before the suit was tried. The proof does not show that defendant entered into possession of the land by color of title, or that he claimed any interest in the freehold. There is no reference in the proof to any deeds under which defendant claimed.   He is not shown to have been anything more than a mere occupant.   How he acquired possession, or by what authority, is not in proof.   Jefferson Brooks, one of defendant's witnesses, testified that the land came into the possession of the defendant in the spring of 1843;

the witness believed defendant bought it of the heirs; he was told so by them; but we are not informed who these heirs are, nor anything about the purchase, nor that defendant ever claimed to have bought the land of heirs, or any other persons.    Some of the witnesses speak of the land as defendant's farm; but this must be regarded as descriptive of the land of which they are speaking, rather than as proof of title.    It is proved that a number of persons had occupied the land at different periods, before defendant took possession of it.

The plaintiffs read in evidence a deed from Samuel W. Dexter, to Jesse Millard, one of the plaintiffs, and others, in fee simple of certain lands on section 31, embracing a grant of a right to flow Dexter's land by a dam, to be raised two feet high.    This deed bears date the 13th January, A. D. 1836.    It is evident from this deed that it was the intention of S. W. Dexter to sell a mill site and privilege on section 31.    Plaintiffs also read in evidence a warranty deed from defendant to S. W. Dexter, bearing date the 16th of June, A. D. 1840, by which defendant and his wife grant to Dexter, his heirs and assigns, forever, the right to flow the north-west quarter of section 30, (described in the declaration,) by a dam to be erected by Dexter, his heirs or assigns, on section 31.    Plaintiffs then offered to prove by S. W. Dexter, who was sworn for them, that previous to the time they erected the dam, Dexter, for a consideration to be paid by them to him, sold the right to flow the land in question by means of a dam; that this sale was by parol, and that, in pursuance of this license, they went on and built the dam, at an expense of $1,000, and flowed the land in question.    Plaintiffs also offered to prove by Dexter, that he had given to them a license by parol to flow the land in question, before they built their dam, and that this license was not revoked.    This evidence was rejected by the court.

The defendant admitted that the plaintiff, Jesse Millerd, had become the sole owner of the land on section 31 described in the deed from Dexter to him and others, before the dam was erected.    I cannot learn from the statements in the bill of exceptions, when the dam was built, nor whether there was any other mill site on section 31, which was then or had been owned by Dexter, or any one else; but I think it may fairly be assumed, from all that is shown, that plaintiffs' mill privilege was the only one on section 31, since Dexter sells, or attempts to sell by parol, the right to flow the lands described in the deed from the defendant to him,

which would not have occurred, most probably, if the right could be useful as connected with another privilege on section 31. Dexter had already sold the mill privilege on section 31, and it would appear that this right or easement was obtained by Dexter of defendant for the purpose of perfecting that privilege; for plaintiffs offered to prove that they did not build their mill dam until they had purchased a license from Dexter, co-extensive with his purchase of defendant, as regarded the quantity of land to be flowed. It is not shown that defendant had any title to any of these lands when he conveyed the right to Dexter. Nothing is proved upon this subject. Whatever his interest was, he sold the right to flow, by a warranty deed, and he covenants to warrant and defend the right to Dexter, his heirs and assigns, against all persons claiming under him. If he purchased those lands afterwards again, or if he took possession of them only, he was precluded by his covenant from asserting any right to them inconsistent with their use by Dexter, or his assigns, in the manner designated in his deed. Dexter could use the right thus acquired, or he could assign it to another. It was not a personal privilege granted to him; it was a beneficial right, with an unlimited power of disposal. Plaintiffs purchased it for the purpose for which it was granted to Dexter, and used it accordingly.

It is objected that this right to flow is an incorporeal hereditament, and that it can only be assigned by deed, devise or record. For this reason the circuit judge rejected the evidence offered by plaintiffs. Plaintiffs insist that the parol sale operated as a license—that Dexter could authorize another to do that in furtherance of the plan of building mills on section 31, which he could do himself. Conceding this position, what was the effect of the parol license?

As a general proposition, an easement upon the land of another, cannot be created without deed. Hewlins *v.* Shippman, 5 Barn. & Cress. 221; 11 Serg. & Raw. 207. A temporary right may be granted to divert water or flow land, by a mere verbal license; and it is said that a right so derived, under certain circumstances, will not be revocable at the will of the giver. Angell on Water Courses 61; 14 Serg. & Raw. 267; 4 id. 241; 2 Stark, Ev. 541; 4 Watts' R. 317. And when executed, or when the party has been led to expend money in faith of such license, it is not revocable. 8 East 508; 14 Serg. & Raw. 267; 7 Taunt. 384; 4 Watts' R. 317; 2 Stark. Ev. 541; Law of Easements 25,

In Winter *v.* Brockwell, 8 East 508, Ld. Ellenborough thought it very unreasonable that, after a party had been led to incur expense in conse-quence of having obtained a license from another, to do an act, and the license had been acted upon, that other should be permitted to recall his license, and treat the first as a trespasser for having done that very act. Angell on Water Courses 65. In the case of Rerick *v.* Kern, 14 Serg. & Raw. 267, the doctrine that a parol license, to use the water of a stream for a saw mill, was good, and obligatory on the person giving the license, if followed by an expenditure of money by the person receiving the license, is fully recognized. 4 Serg. & Raw. 241; 2 Esp. N. P. (Gould's edi.) 268, 636; 17 Serg. & Raw. 383. Such license is good, until countermanded, to excuse a trespass. 4 East 107. Plaintiffs could not be wrong doers until the license was countermanded, in any case. The King *v.* Harndon, 4 Maule & Sel. 562; 8 East 308; 7 Taunt. 384; 4 Watts' R. 317; 4 East 107; 14 Mass. 403; 1 Dev. & Batt. 492. In the case of Clement *v.* Durgin, 5 Greenl. R. 9, plaintiff had agreed to release, or had released by parol, all dama-ges for flowing his lands. The issue tried was whether the respondent had the right to erect the dam and flow the land of complainant, with-out the payment of damages therefor; the state giving the right to raise the dam and flow lands, subject to payment of damages to the owner of land flowed. It was contended the right claimed by respondent was an interest in lands, and was within the statute of frauds, and could only be proved by writing. The court say, we regard it as rather in the nature of a license to do certain acts upon plaintiff's lands, of which pa-rol proof has always been deemed admissible, as to cut trees, build a bridge, or pass over the land of another, or build a fence. In these, and in many similar cases, proof of a parol license from the owner would be deemed a good defence to an action of tresspass. Such a license is re-vocable, unless the party receiving it has been led to incur expense; in which case it is not revocable without tendering an indemity. A parol license is a defence to an action of trespass.

The case of Woodbury *v.* Parshley, 7 N. H. Rep. 237, was an action on the case for flowing plaintiff's meadow land, occasioned by a dam built by defendant on his own land. The dam was built by the consent of plaintiff. The question was whether parol evidence was admissible to prove a license to flow plaintiff's land. The court say, this question is

now settled on sound and satisfactory principles. It is now held that the statute of frauds does not apply to such a case.

When the court say a grant or license by parol, when the law requires it to be in writing, is void, they mean that it is void to confer the privilege to the extent intended by the parties, but not that it is void to all intents and purposes. Until the license is countermanded, no action can be maintained, and this countermand must be proved on the trial.

In the case of Miller *v.* Auburn Railroad Co. 6 Hill 64, the court appear to think many of the English and American cases cited above, are not law to the extent stated in them. Judge Cowen says, if they are law, you have only to throw the grant into the form of a parol license, and on its being executed, the statute and common law are evaded. He refers to the case of Hewlins *v.* Shippman as overruling many English cases; and to 15 Wendell 380; 3 Kent's Com. 451; 6 Wendell 461, 464, as overruling other cases in New York. But the judge still recognizes the rule for which we contend. He says, suppose the right a defendant claims could not be granted by a parol license executed, still the license may operate according to its own nature; and there is no book which teaches that before a license is revoked or has expired, though it be not executed, a man is liable to pay damages for availing himself of it. It does not follow, by any means, that because a license is void for the purpose of conveying an interest irrevocable, it may not enure as a personal authority, and, until revoked, protect a defendant against an action for a wrong. It would be most strange if, because it could not operate as something more than what it professed, it should therefore be held void for its avowed object, and that, too, a perfectly legal one.

This review of the cases on this subject, shows that a parol license is sufficient to defeat an action of trespass, or trespass on the case. If, therefore, the defendant had parted with the right (exercised by the plaintiffs) to Dexter, and Dexter gave plaintiffs a license which protects them, as we think it does, the court erred in rejecting the evidence offered by plaintiffs on this point. We do not understand the evidence was rejected because Dexter had no power to grant such a license, but because it was inoperative, not being in writing, and, therefore, as against defendant, no protection, since his right to occupy the land could not be contested by a stranger, supposing defendant to have the fee in the land.

Dexter never revoked his license, but appears to have acquiesced in the validity of the sale to plaintiffs—at all events, he permitted plaintiffs to flow the land. Defendant in his declaration, alleges his seizin in fee and possession. This is an assertion that the fee was in him. 5 Cruise's Dig. 58, 239. That the title of plaintiff must be proved as laid, see Saund. Pl. and Ev. 687; 2 Saund. R. 113 a, n. 1, 206 a, n. 22, and 207 a, n. 24. This, as a general proposition, is true. There are some cases in which a seizin in plaintiff will be presumed, as when he claims title against a trespasser on lands in possession of plaintiff. But in this case there is no proof that defendant claimed title of any kind. He did not enter, or hold by color of title, and he seeks damages against persons in possession of that portion of the lands in question, by flowing them, and who had so possessed them by flowing them for years before the defendant took possession. The seizin of defendant* could not be presumed to a greater extent than his actual possession. If not, there is no injury done to defendant. The action is for damages to that of which the defendant has not, by his own showing, any actual possession, for it is flowed by plaintiffs. Had the defendant a paper title, whether good or bad, if he entered by color of it, plaintiffs might be called upon to show their right beyond a mere possession; but such is not the case here. It is manifest a mere intruder, or occupier cannot claim, as in this case, for an injury to the inheritance, without showing he had an interest in it to be affected by the plaintiffs' acts. A tenant in possession and the reversioner or remainderman may each have his action for the same nuisance at the same time; and, therefore it is, that the particular interest stated, in respect to which the suit is brought, becomes material.

Color of title, under a deed and occupancy of a part, will be sufficient proof to constitute an adverse possession to a single lot. 1 Cowen 286. This principle applies only to cases where there is no actual occupancy under a different claim.

In Jackson *v.* Vermylia, 6 Cowen 681, the court say, " if A. takes a conveyance or lease of a whole lot, say 63 acres, and improves part, his possession is valid for the whole lot—not on the ground of having title which draws the possession after it until an actual adverse possession commences; but on the ground of a claim of title to the whole, and a possession of a part, which constitutes a good adverse possession.

When a valid possession is acquired in the latter mode, it cannot be defeated by a subsequent entry on the same lot, making an improvement of a part and obtaining a title to the whole. The effect of such subsequent entry would be, to give the person so entering possession of the part actually occupied and improved, but no further." Apply these principles to the present case, and without regard to the license from Dexter, and the fact that the defendant had parted with all his right, whatever it was, to prevent or interfere with the flowing of the land in question: plaintiffs enter and occupy the land by flowing it; defendant enters upon another part of the land without color of title—both being equal in the character and extent of their title—he must be confined to that part actually occupied by him.   10 Wendell 639.

Upon an examintion of the charge of the judge, and applying to it the principles of law which we have gathered or deduced from the cases I have cited, I am of the opinion that the court erred in rejecting the offered evidence of Mr. Dexter.   That the court erred in its instructions to the jury that "proof of occupancy and possession of the premises by defendant during the time in question, would be sufficient to sustain the allegation of seizin."   The court erred in refusing to instruct the jury that there was no legal evidence before them that the plaintiff was the owner of the premises mentioned in the pleadings, at the least the part flowed by plaintiffs, as the defendant did not enter into any part of the premises, or hold by color of title, or any claim besides that of a mere occupant.   I think the plaintiffs entitled to this instruction in relation to the land flowed at the time defendant entered into possession. The charge of the court assumes that defendant, by entering into the possession of a portion of land and occupying it, had a right to the whole, and that his possession was evidence of his seizin of the whole, and that plaintiffs, failing to show any right to flow the land, were. trespassers.   But, as I have said, mere occupancy or possession, without color or claim of title, cannot be evidence of seizin, partiularly as against a prior occupant; and without showing title, or a possession under a claim of title, defendant's possession or right by virtue of it, must be restricted to the land he actually occupied.

I am therefore of the opinion that the circuit court erred in its instructions to the jury, and that the judgment below must be reversed

and the cause remanded, with instructions to issue a venire facias de novo.

*Judgment reversed and venire de novo.*