NEW-YORK,
May, 1836.

Mumford
v.
Whitney.

---

## MUMFORD vs. WHITNEY.

A *parol agreement* that a party may abut and erect a dam upon the lands of another, not for a *temporary* but for a *permanent* purpose, as the creation of a water power for the use of mills and other hydraulic works, is *void* within the statute of frauds.

*It seems* all the cases agree that a permanent interest in the land itself can be transferred only by *writing.*

A *licence* is an authority to enter upon the lands of another and do a particular act or a series of acts, without possessing any interest in the lands—it is founded in personal confidence, is not assignable, and is valid though not in writing ; but the conferring of a right to enter upon lands and to erect and maintain a dam as long as there shall be employment for the water power thus created, is more than a licence—it is the transfer of an *interest in lands,* and to be valid must be in writing.

Where the terms of an agreement are reduced to writing but not signed, and one of the parties takes a copy of the writing to submit to others interested with him in the matter, the other party is not at liberty to read

súch paper in evidence in a suit subsequently brought in reference to the subject matter of the negotiation—the agreement being inchoate.

Where a plaintiff seeks to establish a right to recover by proving the declarations of the defendant, the latter may, on cross-examination of the witness, show all that was said by him in the same conversation; but he is not permitted to prove his own declarations, though made in the same conversation, upon a subject in respect to which the plaintiff had not examined the witness.

THIS was an action on the case tried at the Monroe circuit, in April, 1832, before the Hon. ADDISON GARDINER, one of the circuit judges.

The suit was brought for the recovery of damages for the flowing of lands, by the erection of a dam by the defendant, in the *Genesee River*. The plaintiff showed title to the premises, and proved the injury alleged in his declaration. The dam complained of was erected in 1826, abutting upon the land of the plaintiff and partly placed upon it. The defendant proved a *parol licence* from the plaintiff for the erection of the dam, and also insisted that the plaintiff had recognized *its existence in deeds* executed by him, conveying mill-sites supplied with water for hydraulic purposes by means of such dam. To support this ground of defence the defendant gave in evidence, 1. A deed from the plaintiff to one *Sylvester Felt,* bearing date 1st December, 1825, conveying a *mill-site,* on a canal situate on the *westerly* side of the river, which was supplied with water from the westerly channel of the Genesee river, formed by an island near *Rochester* owned by the plaintiff; together with the privilege of taking such proportion of the water as the width of the lot conveyed, bore to the whole length of the line of the canal; to be held and enjoyed *in common* with the other proprietors upon the canal, and *subject* to a proportion of the expense of repairs, &c.; 2. A contract dated 2d December, 1825, whereby the plaintiff agreed to convey unto one *Silas Ball* a lot upon the same canal, with the same rights as to the use of water, and subject to the same limitations and restrictions as contained in the plaintiff's deed to *Sylvester Felt;* and 3. A deed from the plaintiff to *Sidney S. Allcott,* dated 7th April, 1828, conveying another lot on the canal, with the like privilege of water and with the like conditions as contained in the deed to *Felt* and in the contract with *Ball;* and then

proved that those several lots were supplied with water for hydraulic purposes by means of the dam erected by the defendant. To rebut this evidence, it was shown on the part of the plaintiff, that previous to 1826 the canal mentioned in the plaintiff's deeds was supplied with water by means of a dam erected across the Genesee river in 1812, at the *upper* or southerly end of the island owned by the plaintiff, the half of which dam was cut away in 1824, by one *Solomon Cleveland*, an owner of property on the *east* side of the river, who then erected a dam near the *lower* or northerly end of the island, which, after being carried off by a freshet, rebuilt, and again swept away, was replaced in 1826 by the dam in question. The plaintiff also proved that the deed from him to *Allcott* was executed *pursuant to the terms* of a contract entered into between him and Allcott in October 1825, and that the description of the lot with the water privileges connected therewith, as expressed in the deed, had been taken *verbatim* from the contract.

Several minor questions arose on the trial. The plaintiff had examined a witness as to declarations made by the defendant at and about the time of the erection of the dam in 1826, and of and *concerning such erection.* The defendant's counsel, on the *cross-examination* of the same witness, asked him whether, in the same conversation, the defendant had said that the plaintiff had given his consent to the erection of the dam. The plaintiff's counsel objected to proof of the defendant's declarations, except for the purpose of explaining the declarations called for by the plaintiff, and insisted that the defendant was not entitled to give proof of his own declarations upon a distinct subject, although made in the course of the same conversation. The judge overruled the objection, and the witness testified that the defendant did at that time say that the plaintiff had consented to the erection of the dam. Another question arose as follows: it was proved, on the part of the plaintiff, that in 1824 an agreement took place between him and *Cleveland*, who cut away the old dam in 1824, in respect to the building of a dam on the site of the dam subsequently erected, in 1826; that the agreement was reduced to writing, *but not executed;* that Cleveland took a

copy of it to show to others interested in the matter, and that shortly afterwards he commenced the erection of the dam. After showing these facts, the plaintiff offered the agreement thus reduced to writing in evidence; but the judge refused to receive it. The witness who had given this account of the written agreement, also testified that *Cleveland*, at the time, agreed to construct a stone wall along the east line of the island, to protect it from injury; and after giving such testimony, the plaintiff's counsel enquired of the witness whether it was understood between the plaintiff and Cleveland, that Cleveland should not build the dam, *unless* he built a wall to secure the island. To this enquiry the defendant's counsel objected, and was sustained by the judge.

The judge charged the jury, as to the ground of defence assumed by the counsel for the defendant, that by virtue of the plaintiff's contract and deed, executed *previous* to the year 1826, the grantee acquired the right to locate the dam in question where it had been placed, or to maintain it, that those instruments were to be construed in reference to the actual state of things and the nature of the plaintiff's rights, and could have no application to the dam erected in 1826; and also that those instruments could not be used by the defendant as constituting an *estoppel* to the plaintiff's right of action against the defendant, because the defendant was not a party to them; but he charged them that a *licence*, by the plaintiff to the defendant and others, to construct the dam in question, would constitute a valid defence to the action, because the plaintiff would thus be a party to the nuisance, and he could not recover for any injury it produced, and submitted the evidence on the subject of the licence to the consideration of the jury. The judge also charged the jury that the conveyance by the plaintiff to *Allcott* of mill privileges and the right of using water on the canal, referred to and adopted the *means* of furnishing water to the canal *as they existed at the date of the deed*, and as the present dam was then erected the deed was a full confirmation and recognition of it, and that such confirmation and recognition applied to the effects of the dam upon the property of the plaintiff. He told the jury that it had been fully proved that the plaintiff had sustained some

NEW-YORK, injury, and that as to the measure of damages, they were the
May, 1836. exclusive judges. The jury found a verdict for the defend-
ant. The plaintiff's counsel having excepted to the charge
Mumford of the judge and to various decisions in the progress of the
v. trial, now moved to set aside the verdict.
Whitney.
The cause was argued by

*J. C. Spencer,* for the plaintiff.

*F. M. Haight & D. D. Barnard,* for the defendant.

*By the Court,* Savage, Ch. J. The questions are, 1. Wheth-
er the defendant was entitled to prove his own declarations,
made in the same conversation about which the plaintiff had
examined the witness; 2. Whether the copy of the agree-
ment reduced to writing, but not executed, should have been
received in evidence; 3. Whether the witness should have
been permitted to testify as to the licence being *conditional;*
4. Whether a *parol licence* in this case is valid; 5. Whether
the *deed* to *Allcott* was a recognition of the dam erected by
the defendant.

1. It was said by this court in *Fenner* v. *Lewis,*10 *Johns.R.*
45, there is no principle in the law of evidence better settled,
than that if you will examine as to the confession of a party
you must take the whole confession together; you cannot
take part and reject part. The same rule is laid down in
treatises upon evidence, 1 *Phil.Ev.*84, *ed. of* 1823. *See also*
3 *Johns. R.*427; 11 *id.* 161. The case of *Fenner* v. *Lewis*
exemplifies the rule. The plaintiff wished to prove that he
had delivered or offered a pair of horses to his wife, who lived
separate from him. The defendant, to disprove the fact, call-
ed a witness, who testified that he saw the horses in New-
York, and being asked by the defendant whether the plain-
tiff did not say that he wanted to sell them, answered that he
did; but added that the plaintiff assigned as a reason, that he
had offered them to Mrs. F. and she would not receive them,
and he must do something with them. In the present case
it does not appear what question the plaintiff put to the wit-

ness, only that it was *concerning the erection of the dam*, and about the time of its erection. The plaintiff's counsel insisted that the defendant was not entitled to draw out his own declarations upon a distinct subject, although made in the course of the same conversation. The rule must certainly have some such limitation ; it could not be tolerated, that a party could thus draw out his own declarations upon a subject on which the opposite party had not examined the witness. But in this case the subject matter of the inquiry by the plaintiff was what the defendant had said concerning the erection of the dam; and his answer probably was, that he had built it—and he then assigned the reason by his cross-examination, viz. because the plaintiff had assented to it : without such assent, he would have had no right to do the act. It seems to me that the cross-examination was proper, and within proper limits ; certainly as much so as when Fenner proved by his declarations the fact that his wife refused to receive the horses. So where the defendant said he had borrowed the money, but that he had repaid it.

2. The judge, in my opinion, properly rejected the copy of the draft of an agreement between the plaintiff and Solomon Cleveland. It was evidently not completed, as Cleveland took it to consult the other proprietors about it.

3. It was proved, without objection, that it was agreed by Cleveland that he would protect the plaintiff's island by a wall extending from the dam to the bridge, and that while Cleveland was building the wall, the plaintiff told him that the dam must not be built, unless the wall along the east line of the island was made. The question whether it was understood between the plaintiff and Cleveland, that Cleveland should not build the dam unless he built a wall to secure the island, was rejected. The question was proper. Whether *licence* had been given was the point of inquiry ; and if the plaintiff could prove that the licence was *conditional*, and that the condition had not been performed, then he was absolved from the licence ; or rather the licence was never operative, because the condition upon which it depended had not been performed.

4. Suppose, however, the licence to have been properly and fully proved, was it valid and available as a defence to this action? Did it purport to convey an interest in or concerning the lands of the plaintiff, which required an agreement in writing? The 9th section of the statute of frauds of 1813, 1 *R. L.* 78, § 9, declares that all leases, estates, interest of freeholds or terms of years, or any uncertain interests of, in, to or out of any lands, made by parol and not in writing, shall have the effect of estates at will only. This clause excepts leases for three years. The 10th section declares that no such interest shall be assigned, granted or surrendered, unless in writing. The 11th section declares that no action shall be brought upon any contract for sale of lands, or any interest in or concerning them, unless the agreement be in writing. It must be conceded that the decisions on the question, what is an interest in lands within the meaning of the statute, are not easily reconcileable with the statute or with each other. In an old case, before the passing of the 29th *Ch.* 1, *Webb* v. *Paternoster*, *Palmer*, 71, a licence was given to a party to erect a stack of hay till he might conveniently sell it; it stood two years, and then a lease of the land was granted to a stranger, who gave notice to remove it, and half a year after turned his beasts into the field, who ate the hay; yet, because of the convenient time to remove, the judgment was for the defendant. *Viner's Abr. tit. Licence, F. pl.* 2. Upon the authority of this case, it is said by Mr. Sugden, *Sugden's Vendors*, 56, the case of *Wood* v. *Lake*, *Sayer*, 3, was determined. There was a parol agreement to stack coals on part of a close for seven years, with the use of that part of the close. The court held the agreement good. They said the agreement was only for an easement, and not for an interest in the land; it did not amount to a lease, and it was held good for seven years. It has been held that *timber growing* may be sold by parol, 1 *Ld. Raym.* 182; but *grass growing* cannot, because such a contract is a sale of an *interest in*, or at least an interest concerning lands. *Crosby* v. *Wadsworth*, 6 *East*, 611. So also that a sale of turnips growing must be in writing, 2 *Taunton*, 38; but in the case of *Parker* v. *Stainland*, 11 *East*, 362, a parol sale of potatoes in the ground was held val-

NEW-YORK,
May, 1836.

Mumford
v.
Whitney

id, and not within the statute. The difference between this case and *Crosby* v. *Wadsworth*, as stated by Lord *Ellenborough*, is this : that in that case the contract for the grass was made while growing, but the contract was for the potatoes in a matured state. The grass was to grow before cut, but the potatoes were to be removed immediately. In this court, however, it has been expressly adjudged that wheat or corn growing is a chattel, and may be levied on and sold as such by virtue of an execution. 2 *Johns. R.* 418, 421. 9 *id.* 112. 9 *Cowen*,42. The case of *Crosby* v. *Wadsworth*, was doubted by *Spencer*, justice, in *Frear* v. *Hardenbergh*,5 *Johns.R.*276, where he remarks that the statute could have in view, to avoid such agreements in relation to lands as rested in parol, only where some interest was to be acquired *in the land itself*, and not such as were collateral, and by which no kind of interest was to be gained by the agreement, in the land. A licence *to enter upon land* does not purport to convey an interest in the land ; it is substantially a promise, without any consideration to support it, and while it remains *executory*, may be revoked at pleasure ; but when *executed*, it in general can only be revoked by placing the other party in the same situation, in which he stood before he entered on its execution. So a promise to give may be rescinded before execution, but not after. It is said, however, that if a rule of law would be transgressed by holding an executed licence irrevocable, it cannot be done ; the law must stand and the licence be revoked. *Hammond's N. P.* 207. In the case of *Winter* v. *Brockwell*, 8 *East.* 308, the plaintiff complained that the defendant had placed a sky light over an opening area above the plaintiff's window, by means of which light and air were prevented from entering. The defence was, that the area belonged to the defendant's house, and the sky light was put over it by the express consent and approbation of the plaintiff before the enclosure, who, after it was done, gave notice to have it removed. Lord Ellenborough, before whom the cause was tried, was of opinion that the licence of the plaintiff having been acted upon and expense incurred, it could not be recalled without offering to pay all expenses incurred under it. The defendant had a verdict, and a new

trial was denied. On the trial, the question was raised, whether a parol licence, as this was, was good by the statute of frauds, but it was overruled. In *Taylor* v. *Waters*, 7 *Taunton*, 374, it was held that a beneficial licence to be exercised upon land may be granted without deed and without writing. The plaintiff was the bearer of an opera ticket which gave him admission to the opera house for twenty-one years, and was denied admission by the defendant, for which an action was brought. One ground of defence was, that this was an interest in land, and could not pass without a writing. To this it was answered that it was not an interest in land, but a licence irrevocable to permit the plaintiff to enjoy certain privileges thereon, and therefore need not be in writing; and of this opinion was the court. Ch. J. Gibbs cited the cases of *Webb* v. *Paternoster*, *Winter* v. *Brockwell*, and *Wood* v. *Lake*, and remarks: "These cases abundantly prove that a licence to enjoy a beneficial privilege on land may be granted without deed, and notwithstanding the statute of frauds without writing."

These cases relate to some privilege to be exercised upon the land. The case of *Fentiman* v. *Smith*, 4 *East*, 108, decides that a parol licence to make a tunnel through the defendant's land, to carry water to the plaintiff's mill, was revocable at any time. The defendant had agreed for the consideration of a guinea, to be paid by the plaintiff, to let the plaintiff lay a tunnel through his land for carrying the water; and even assisted in making it; but there was no conveyance. The guinea was afterward tendered, but the defendant refused to receive it, and cut a channel, by which the water was diverted. Lord Ellenborough says, the title to have the water flowing in the tunnel over the defendant's land could not pass by parol licence, without deed; and if by licence, it was revocable at any time. A case in some respects resembling the last is found in 14 *Serg. & Rawle*, 267. Kern sued Rurick in a court of common pleas, for diverting a water course, in consequence of which he lost the use of his saw-mill. It appeared that before he built his mill he applied to Rurick for permission to turn the water from what was called the right hand stream into the left hand stream, which, without the

'water of the former, would have been wholly insufficient; permission was given to turn the stream through R.'s land, but no deed was given, nor any consideration paid; a mill was built on the left hand stream, which would not have been done but for the permission to turn the water. Subsequently R., the defendant below, turned away the water of the right hand stream. The court below decided, in substance, that the licence might have been revoked before Kern had incurred the expense of building his mill, on the faith of Rurick's promise; or he might have revoked it, if it had been given after the mill had been built, but not after he had induced Kern to be at the expense of building his mill. Upon a writ of error brought into the supreme court the plaintiff's counsel relied upon the above case of *Fentimen* v. *Smith,* and *Dexter* v. *Hazen,* 10 *Johns. R.* 246, where the defendant, having given permission to the plaintiff to pass over his land with teams, revoked it; and the court said that it was a mere licence, gratuitously given, and revocable at pleasure, being still executory. On the other side it was contended that the licence was irrevocable, after expense had been incurred upon the faith of such licence; and it was compared to a parol gift of land, accompanied with possession, and also that it was a fraud for Rurick to witness the expenditure of money upon his land, and afterwards revoke his licence. *Gibson,* justice, gave the opinion of the court, and held that a licence may become an agreement on valuable consideration, as when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. He held that equity would decree the specific performance of such an agreement. That a right, under a licence, when not specially restricted, is commensurate with the thing of which the licence is accessory; that relating to a permanent eviction, it was of unlimited duration. It had been previously decided in that court, in the case of *Le Fevre* v. *Le Fevre,* 4 *Serg.& Rawle,* 241, that after the execution of a deed, conveying a right to lay down pipes to conduct water through the granted land by courses and distances, the route might be altered by parol, and be valid, after it was carried into effect.

NEW-YORK,
May, 1836.

Mumford
v
Whitney.

This subject has been viewed very differently by the supreme court of Massachusetts, in *Cook* v. *Stearns*, 11 *Mass. R.* 536. That was an action of trespass, for entering upon the plaintiff's close, and digging up his soil. The defendant pleaded that he was the owner of a mill and dam, near the plaintiff's close; part of the dam being made upon the plaintiff's close, by the consent of the then owners; and that it was necessary to repair the same, and the defendant entered for the purpose of repairing. The plaintiff demurred, assigning for cause, that there was no conveyance. For the defendant it was, among other things, contended that there was a licence, which being once executed was not revocable. *Parker*, chief justice, gave the opinion of the court, and states the defendant's claim a permanent interest in the plaintiff's close; a right to maintain the dam and canal, which was formerly placed there by consent; and to enter at any time, to make repairs. This, he says, is an interest in lands which cannot pass without deed or writing. The counsel for the defendant had contended that such a licence might be by parol, and that it could not be countermanded. The learned judge says, " This argument had some plausibility in it, when first stated ; but upon more mature consideration it seems to have no foundation in principles of law. A licence, he says, is technically an authority given to do some one act, or series of acts, on the land of another, without passing any estate in the land : as to hunt, to cut down trees ; these are, when *executory*, revocable, but not when *executed;* but licences which, in their nature, amount to the *granting of an estate,* for ever so short a time, are not good, without deed, and are considered as leases, and must be pleaded as such." He adds, " The distinction is obvious. Licences to do a particular act do not, in any degree, trench upon the policy of the law, which requires that bargains respecting the title or interest in real estate shall be by deed, or in writing. They amount to nothing more than an excuse for the act, which would otherwise be a trespass ; but a permanent right to hold another's land for a particular purpose, and to enter upon it at all times, without his consent, is an important interest, which ought not to pass without writing, and is the very object provided for by our statute." He

concedes that the licence authorized the particular act, but not a repetition of it ; and says, that the transfer of the land to another was a countermand of the licence. The court held the plea bad, not showing such a licence as may be pleaded, and the interest claimed being not in the nature of a licence but of an estate, or at least an easement in the land, which cannot be acquired without writing or prescription, or such a possession as furnishes a presumption of a grant. If the plea were held to be a bar to the action, all the mischiefs and uncertainties which the legislature intended to avoid, by requiring such bargains to be put in writing, would be revivèd ; and purchasers of estates would be without the means of knowing whether incumbrances existed or not on the land which they purchase.

In *ex parte Coburn*,1 *Cowen*,570, this court said, that a right of way is a real or chattel interest, according to the term of its duration, and the former is well known as an incorporeal hereditament; not so of a *licence* to enter upon another's land, without consideration. This is not an interest, it is a mere authority, revocable at any moment; not in its nature assignable, but limited to the person of the grantee. Giving permission to walk over one's land is but an excuse for a trespass. The case of *Thompson* v. *Gregory*, 4 *Johns. R.* 81, has been much relied on by the plaintiff's counsel, as containing the principle for which he contends. Thompson sued Gregory, for damages for overflowing his land, by means of a dam on Gregory's own land. The defence set up was that S. Van Rensselaer had leased both plaintiff's and defendant's land, and reserved to himself and his assigns the privilege of building dams and flowing lands, and that this right had been assigned by parol to the defendant. The court say the right in question could not pass by parol; the right reserved to the grantor was an incorporeal hereditament. It was not the land itself, but a right annexed to it, and it could only pass by grant. No such interest could be assigned or granted without writing, according to the express provision of the statute of frauds. And in *Jackson* v. *Buel*, 9 *Johns. R.* 298, it was held that ejectment would lie by the grantor for such a reservation. Chancellor

Kent, in his commentaries, 3 *Kent's Com.* 452, says, that the modern cases distinguish between an easement and a license. A claim for an easement must be founded upon grant, by deed or writing, or upon prescription which presupposes one, for it is a permanent interest in another's land, with a right, at all times, to enter and enjoy it; but a license is an authority to do a particular act, or a series of acts upon another's land, without possessing any estate therein. It is founded in personal confidence, and is not assignable. This distinction between a privilege or easement carrying an interest in land, and requiring a writing within the statute of frauds to support it, and a license which may be by parol, is quite subtle, and it becomes difficult, in some of the cases, to discern a substantial difference between them.

I shall not undertake to reconcile these various cases. It is evident the subject has been understood very differently by different judges. But in this all agree, that according to the statute of frauds, any permanent interest in the land itself, cannot be transferred, except by writing. Much of the discrepancy may have arisen from the different ideas attached to the word *license*. If we understand it as Chancellor Kent defines it, it seems to me there can be no difficulty. It is an authority to do a particular act upon another's land; is founded in personal confidence, and is not assignable. For example, A. agrees with B. that B. may hunt or fish on his, A.'s land; A. thereby gives B. a licence for that purpose. This gives B. no interest in the land; he cannot authorize any other person to go upon the land; it is a personal privilege granted to B. alone. If, after A. has given his consent, and before B. has entered upon his land A. changes his mind, he has a right to do so, and forbid B. from entering upon his land for the specified purpose. The licence is thus far executory, and may be revoked at pleasure; if B. afterwards enters, he is a trespasser. If, however, B. enters before any revocation of licence, the licence is then executed; and it is not competent for A. to revoke it, and make B. a trespasser. This doctrine is applicable only to the *temporary* occupation of land, and confers no right nor interest in the land. If A. agrees with B. that he may enter upon his land, and occupy it for a year,

NEW-YORK,
May, 1836.

Mumford
v.
Whitney.

that is not properly speaking, a licence merely; it is more—it is a lease, and if no term be specified in the agreement, it is an estate at will. If the period of occupation expressed or implied previous to 1830 was more than three years, it required an agreement in writing to support it. If there was no written agreement, the right of occupancy could certainly not extend beyond three years. Where an interest greater than a temporary occupation was to be created, it might be an easement, as a right of way ; such an easement is, or may be, a permanent interest in the land over which the right of way exists, and must be founded·upon grant or prescription, which supposes a grant. Such an interest is not properly a licence; it may be assigned, and cannot be revoked. If A. agree with B. that B. may build a dam upon the land of A., or across an island, as in the present case, if it is to be permanent, or any thing more than a mere temporary erection, such an agreement is not technically a licence. The object of A. is to grant, and of B. to acquire an interest which shall be permanent; a right not to occupy for a short time, but as long as there shall be employment for the water power to be thus created ; can such an interest, such a right be created by parol ? As Mr. Sugden says of the case of *Wood* v. *Lake,* " It appears to be in the very teeth of the statute which extends generally to all leases, *estates* or *interests.*" It declares that all leases, estates, interest of freehold, or terms of years, or any uncertain interests, of, in, to or out of any lands, made by parol, and not in writing, shall have the effect of estates at will only. To decide that a right to a permanent occupation of the plaintiff's land may be acquired by parol, and by calling the agreement a licence, would be in effect to repeal the statute.

The only other question arising upon the bill of exceptions is whether the judge was correct in charging the jury that the conveyance by the plaintiff to *Allcott* of mill privileges, and the right of using water on the canal and race, referred to and adopted the means of furnishing water to that canal as they existed at the date of the deed and that as the present dam was then erected, the deed was a full confirmation and recognition of that dam. A reference to the terms of the deed to

*Felt* will show that the subject of that conveyance was the privilege of the water power which was created, in part by means of a dam. The purchaser was of course entitled to the privilege, to the full extent of which it was capable of enjoyment at the time of the purchase; that is, he was entitled to raise the water to the height at which it was at the time of the purchase and sale. If the grantor suffered any inconvenience from the flowing of the water upon his lands, no action would lie for such damages. The grantee would not, however, be authorized in raising the water higher; nor, as I apprehend, would he be justified in building a dam in another place. For instance, when the deed to *Felt* was executed, I will suppose that there was no dam but the old dam at the head of the island, (though the fact, I believe was otherwise;) in that case the grantee would have no right to build a dam at any other place, unless it became absolutely necessary; nor could he raise the water higher than it might be raised by the dam existing at the time of his purchase. At the time of Felt's purchase, Cleaveland's dam was the only one which supplied water to the water lots. Felt's deed recognized, of course, that dam; and gave him his proportion of all the benefit to be derived from the head of water which it furnished. In the same manner the deed to *Allcott*, bearing date in 1828, after the erection of the dam of 1826, gave to the grantee the benefit of that dam. Whether it is higher or lower than Cleaveland's dam, the case, I believe, does not inform us; nor is it important to the decision of this point. It is contended, on the part of the plaintiff, that the extent of the privilege conveyed by this deed is to be ascertained by the contract which was entered into in October, 1825; that the deed being executed in fulfilment of that contract, it must be construed in reference to it, and to the state of the privilege then existing. If the dam of 1826 had been less favorable to the grantee than that of 1825, the purchaser would no doubt be entitled to the full benefit of his purchase; and would be authorized to raise the dam to the height of that of 1825. But if the dam in 1828, when the plaintiff conveyed to Allcott, was higher than in 1825, when the contract was made, and the plaintiff has conveyed all the water privilege then enjoyed,

Ĭ apprehend he is not at liberty to diminish the privilege thus granted. A deed is construed most strongly against the grantor. If there has been any mistake, it cannot be corrected in this court, but resort must be had to the court of chancery. There is no pretence of fraud or imposition upon the grantor, in relation to the execution of the deed. 5 *Wendell*, 525. 7 *Cowen*, 266. It seems to me that the deed of 1828 is a recognition of the dam of 1826 ; the plaintiff cannot deny the proper and lawful existence of the dam as it stood at the date of that deed. The right to maintain the dam is granted by the deed ; the dam is therefore no nuisance as to the plaintiff. He has recognized it, and conveyed to Allcott all the water privileges created by it, and is not at liberty to treat it as a nuisance. On the whole case, therefore, there is no reason for granting a new trial.