The Assistant Vice-Chancellor.
The bill charges that by the indenture of March 16th, 1839, executed between Wilder and Van Ranst, it was intended to be agreed that the party wall for which it provided should be used by-Van Ranst whenever he should build on his lot adjoining Wilder’s; and that no wall should be erected by him or his heirs or assigns, which should project in front of the front end of that party wall. It is impossible for me to derive any such legal intent from the indenture, as is claimed by the complainant. Indeed, the bill itself, as well as the counsel at the hearing, reposed the complainant’s equity, upon a distinct express agreement between Wilder and Van Ranst, that the buildings to be erected on their respective lots should be set three feet back from the line of Broadway; which agreement, when it was introduced in evidence, turned out to have been made by parol.
Several interesting points, growing out of this parol contract, were presented and ably investigated by the counsel on both sides ; but in the view which I have been constrained to take of the case, it will not be incumbent on me to examine more than two of them at much length.
*88 The evidence in support of the making of the agreement, I will not criticise or recapitulate; but will assume, for the purposes of the argument, that it is proved as it is stated in the bill.
In regard to the point that the defendant had no notice .of the agreement before he purchased, I consider that it is of no consequence, (otherwise than in disposing of the costs of the suit in a decree against him,) whether he had notice or not. He had not paid any part of the purchase money when the bill was filed, nor had any conveyance been delivered to him. He was wanting in both of the essential attributes of a bona fide purchaser, reposing himself in equity upon the absence of notice.
The defendant, although he bought with constructive notice, and persisted, after actual notice of the complainant’s reasonable expectations and supposed rights, in thrusting himself into this controversy, (I must say, so far as the testimony discloses, very needlessly, if not wantonly and ungenerously,) to the prejudice and discomfort of the complainant, is entitled in this tribunal to his rights as regulated by law; and it is not my province to judge him by his moral or social derelictions.
In ascertaining those rights, I propose to examine two questions ; first, is the contract relied upon, within the statute of frauds 1 and second, if it fall within the statute, is this a case in which equity may nevertheless carry it into execution ?
First. Does this agreement come within the provisions of the statute 1
The sixth section of the statute “ of fraudulent conveyances and contracts relative to lands,” enacts that no estate or interest in lands, except leases for a year or less, nor any trust or power, over or concerning lands, shall be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing. And by the eighth section, every contract for the sale of any lands or any interest in lands, shall .be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the sale is to be made. (2 Rev. St. 134, 135, § 6, 8.)
It is claimed on the part of the complainant, that the urban servitude which he seeks to establish against the defendant’s lot, *89 is not an estate or interest in land, nor a trust or power over or concerning land. That he claims no right in the defendant’s land; his claim being not so much an easement, as a right in the nature of an easement, founded on Yan Ranst’s contract that he would use his land in a particular manner. And he defines his claim, as a privilege growing out of the restricted use of Yan Ranst’s land thus contracted for. It is difficult to perceive how this right, if it be neither an estate or interest in or over Yan Ranst’s land, can be said to have run with,-the land, into the hands of his heirs and their grantees; which is a proposition also urged by the complainant. But I need not speculate on the apparent inconsistency of the two positions.
It is impossible for the complainant to describe his claim, without plainly showing that it is an interest in the land owned by the defendant.
The definition of an easement, as given so long ago as the Termes de la Ley, includes this right as it was defined by one of the learned counsel. It is a privilege that one neighbor hath of another by charter or prescription without profit 5 and as described in a modern treatise, it is “ a privilege without profit, which the owner of one neighboring tenement hath of another, existing in respect of their several tenements, by which the servient owner is obliged to suffer or not to do something on his own land, for ^ the advantage of the dominant owner.” (Gale and Whatley’s Law of Easements, 5.) The essential qualities of easements are,'these : 1st, they are incorporeal; and 2d, one imposed upon corporeal property; 3d, they confer no right to a participation in the profits arising from such property; 4th, they are imposed for the benefit of corporeal property; and 5th, there must be two distinct tenements, the dominant, to which the right belongs, and the servient, upon which the obligation rests. (Ibid. 5.)
The right or privilege set up in the bill, contains each of these essential qualities. It is, as there stated, an incorporeal hereditament, accessory to the complainant’s tenement, and attached to 1 the soil of Yan Ranst’s as the servient tenement; subjecting the latter for the benefit of the former ; and as such hereditament, it , would pass with the servient heritage to each successive propri- j etor, precisely as the complainant insisted in his points. (Pen *90 ruddock's case, 5 Rep. 101.) In Parker v. Foote, (19 Wend. 309, 317,318,) where the claim set up, was a right to continue the enjoyment of light and air through windows overlooking the adjoining land ; Judge Bronson, in delivering the opinion of the court, speaks of the claim as one by which the party acquired a beneficial interest in the land of his neighbor, and by which the latter forfeited such interest.
I need not dwell on the proposition .that incorporeal hereditaments, are inheritable^and of course assignable, rights ; issuing out of, or concerning, lan'ds. Ajjd it may with as much propriety be said that a rent charge is not an interest in lands, within the meaning of the statute of frauds, as to assert that an easement is not such an interest.
There has been a strong tendency in some of the modern decisions, to relieve hard cases arising under this branch of the law, from the force of the statute o’f frauds. Several of those cited by the complainant, exhibit this tendency, and especially Winter v. Brockwell, 8 East, 308, and Taylor v. Waters, 7 Taunt. 384; and such was Woodbury v. Parshley, 7 New Hampsh. R. 237. If these decisions are law, a parol license, executed or acted upon, is sufficient to pass an incorporeal hereditament ; thus not merely repealing the statute of frauds, but abolishing the rule of the common law that such an estate can only be conveyed by a deed.
The case oi Winter v. Brockwell, is commented upon in many of those which followed it, and Taylor v. Waters has been overruled in England, and disregarded here. See Gale & What, on Easements, 19 to 45, for a statement and review of the late decisions in England.
The struggle in the hard cases referred to, has been to christen these privileges in another’s land, as licenses, rather than easements ; but the attempt has not succeeded.
I will refer to a few of the authorities on the question.
In Hewlins v. Shippam, 5 Barn. & Cress. 221, which was a well considered case, the defendant, for a valuable consideration, assented to the plaintiff’s making a drain in the defendant’s land. The plaintiff made the drain at considerable expense, and some years afterwards the defendant stopped it up. The court held *91 that the right claimed by the plaintiff to keep up this drain, was an incorporeal right, such as rents, rights of common, &e., and a freehold interest in it could not be created or passed otherwise than by deed. That although a parol license might be an excuse for a trespass, until such license was countermanded; a right and title to have such a passage for the water, a freehold interest, required a deed to create it; and there being no deed shown, the plaintiff could not support his action.
In Cocker v. Cooper, (l Cromp. M. & Rose. 418,) this case was fully recognized and approved. There, the plaintiff in 1815, had, with the defendant’s verbal consent, constructed a drain and tunnel in the latter’s land, and the water flowed in it till 1833, when the defendant stopped up the drain. The court held, that the plaintiff could not recover ; and said, “ With regard to the question of license, Hewlins v. Shipp am is decisive to show, that an easement like this cannot be conferred, unless by deed." (And see Bryan v. Whistler, 8 Barn. & Cress. 298; and Fentiman v. Smith, 4 East, 107.)
Gale & Whatley, in their treatise before cited, pages 42, 43, say, “ The result of the decided cases appears "to. be this ; a man may, in some cases, by parol license, relinquish a right which he has acquired” (by parol) “ in addition to the ordinary rights of property, and thus restore his own and his neighbor’s property to their original and natural condition ; but he cannot, by such means, impose any burthen upon land in derogation of such ordinary rights of property.”
In Mumford v. Whitney, (15 Wend. 380,) it was decided, that a parol agreement to permit a party to abut and erect a dam on lands of another, not for a temporary, but for a permanent purpose, is void, within the statute of frauds. The effort in support of the dam, was to make out that the agreement was a license, which having been executed, was not revocable. But the court held, that it was more than a license; it was the transfer of an interest in lands.
A license, is an authority to do a particular act or series of acts, upon another’s land, without possessing any estate therein. A claim for an easement, must be founded on prescription or a grant by deed, for it is a permanent interest in another’s land. *92 A license when executed, will prevent the owner of the land from maintaining an action of case or trespass, for- the acts done under it; but it is revocable at pleasure, and will not be a defence to any act done after it is revoked. Thus, it is applicable only to the temporary occupation of land, or dominion over it, and confers no right or interest in the land.
On the other hand, an agreement that one may enter and use land for a year, is more than a license ; it is an estate in the land. So of an agreement that one will not build on his own land, so as to obstruct his neighbor’s light and prospect from the windows in the adjoining house of the latter.
These distinctions are derived from the case just cited, from 3 Kent’s Comm. 452, and from Cook v. Stearns, a strong authority in 11 Mass. R. 533.
Chief Justice Savage' says, in 15 Wend. 393, “ To decide that a right to a permanent occupation of the plaintiff’s land, may be acquired by parol, and by calling the agreement a license, would be in effect, to repeal the statute.” The remark is equally applicable to an agreement set up by the owner of one tenement, against the owner of the one adjoining, that the latter shall permanently refrain from building upon his land, or using it in a particular manner, for the benefit of the tenement of the former.
The judgment of the court in Miller v. The Auburn and Syracuse R. R. Co., (6 Hill, 61,) sustains this' doctrine fully. And see the note to the second American edition of Smith’s Leading Cases, 27 Law Library, Phila., New Series, page 92.
My conclusion is, that the agreement proved, is invalid by the statute of frauds, and that the right claimed by the complainant, is not established and cannot be sustained as an existing legal right. Whether it be such a contract as equity will enforce notwithstanding the statute of frauds, remains to be considered.
Before proceeding with that inquiry, I will advert to another point, as illustrating the one just decided, viz: that the rights acquired by Wilder against Van Ranst, under the agreement, descended to and vested in the complainant as against the defendant, a purchaser from Van Ranst’s heirs or devisees. Now the eases on which the complainant relied, leave no middle *93 ground between a license, and an easement or hereditament. His right must fall within one class or the other. If within the latter, it is void by the statute. If within the class of licenses, what is the language of all the authorities, which have attempted to support similar interests, or which define a license? Uniformly, that a license is founded in personal confidence, and that it is not assignable or descendible. It was so held in Jackson, ex dem. Hull v. Babcock, (4 Johns. R. 418.) The same was adjudged in Bridges v. Purcell, (1 Dev. & Batt., N. C. Law Rep., 492,) where, in a suit for overflowing land by a mill dam, the defendant proved a parol consent by the plaintiff's ancestor, to the erection of the dam. The court said, that if the right were appurtenant to the land, or fastened to it, so as to descend with it, such right was an interest in the land, and within the statute of frauds. The same doctrine is laid down in Shep. Touch. 231, 3 Kent’s Comm. 452, 15 Wend. 392, and in many others. See also, 1 Smith’s Leading Cases, before cited, page 93, note.(a)
If, therefore, the agreement were sustained as a license, thereby evading the statute, it would appear to have terminated with the assignment of Wilder on the one hand, and the death of Yan Ranst on the other.
Second. The remaining inquiry which I proposed, is the power of this court to give effect to the agreement as stated in the bill; it being void' by the statute of frauds.
Chancellor Kent says, “'the law is solicitous to prevent all kind of imposition and injury, from confidence reposed in the acts of others; and a parol license to do an act, on one’s own land, affecting injuriously the air and light of a neighbor’s house, is held not to be revocable by such neighbor, after it has been once acted upon.” For which position, he cites Winter v. Brockwell, heretofore mentioned, another case before the statute, and two Pensylvania decisions, following Winter v. Brockwell. The learned commentator then adds, “ such a license is a direct en *94 couragement to expend money, and it would be against conscience to revoke it, as soon as the expenditure begins to be beneficial. The contract would be specifically performed in equity. Such a parol .license to enjoy a beneficial privilege, is. not an interest in land within the statute of frauds.” He also says, “ in Liggins v. Inge, 7 Bing. 682, the court distinguished between licenses which, when countermanded, leave the party in statu quo, and licenses for the construction of buildings and works, and they are not revocable.”
f The expenditure of money, where it is for the benefit of the party setting up the agreement, and of no advantage to the other party, and the agreement being in point of law of no validity; can scarcely of itself be the basis of a jurisdiction in equity, to make that valid which a statute declares shall be void.
Where a license is given to erect a house on another’s landj equity will not, after the house is built, compel the owner of the land either to pay for it, or to suffer it to remain. The other party at most, may remove his building. In this instance, it was of no particular advantage to Van Ranst, to have Wilder’s house set back from the street, unless Van Ranst should build a similar house, and even then, mens tastes would differ as to the advantage suggested. If he wanted to build a shop or store, or a hotel on his ground, most persons would deem it an injury to have its front set back from the line of the street.
Again, many might believe, as Wilder did, that it was best for him to set his house back three feet, whether Van Ranst did, or did not agree to do the same. It seems impossible to apply the principle of fraud to these facts, when founded on the expenditure of Wilder’s money in building on the line proposed by him.
Some allusion was made at the hearing, to an agreement to build three feet from the line of the street, constituting a part of the contract by which Van Ranst sold to Wilder two feet in width from the north side of his land. This is not set up in the bill; and besides other answers to it, Mr. Silliman’s testimony makes it a condition imposed on Wilder by Van Ranst, without any corresponding agreement on the part of the latter, in respect of his own land.
*95 The complainant’s principal reliance, in this part of his case,, was on the performance of the agreement by Wilder on his part. He built a very expensive house on the stipulated line, which, it is said, enhanced the value of Yan Ranst’s lots, and which j will be greatly injured by the latter being built upon up to the / line of the street. That Wilder expended his money on the faith' of the agreement, and neither he or his grantee can now be put | in the same situation they were and would have been, had the / agreement never been made.
Yan Ranst’s payment for the party wall, is mentioned asa - part performance on his part. But the payment was made before the wall was begun ; and as I have already stated, the party-wall agreement was entirely distinct from the one upon which this suit is brought.
In order to make the acts such as a court of equity will deem part performance of an agreement within the statute, it is essential that they should clearly appear to have been done solely with a view to the agreement being performed. If they are acts which might have been done with other views, they will not take the case out of the statute, since they cannot properly be said to be done by way of part performance of the agreement. So it is not only indispensable that the acts done should be re- I ferable exclusively to the contract; but the parol contract ¡ should also be established by competent proofs, to be clear, def- i inite and unequivocal, in all its terms. And moreover, nothing'/ is to be considered as a part performance, which does not put the ) party into a situation which is a fraud upon him, unless the; agreement is fully performed. (2 Story’s Eq. Jur. § 761, 762, 764 ; Cole v. White, cited in 1 Bro. Ch. Ca. 409, 413, 416 ; Lord v. Underdunck, 1 Sand. Ch. R. 46.)
Conceding that this parol agreement was transmitted to the complainant as an equity appurtenant to the property, what is its effect ? As stated in the bill, it would bind Yan Ranst’s land to the end of time, while Gordon and Wilder’s contract would expire whenever their buildings should be destroyed. The latter limit was the construction which one of the complainant’s counsel placed upon the agreement; and in reference to its duration against Yan Ranst, he said it was not to be perpetual, *96 but was to continue so long as the occasion for it continued. Now, how long is that to be, and. who is to decide that the occasion for it has ceased ? Will it cease when either Mr. Gordon or Mr. Wilder’s grantee, chooses to pull down his house, or to convert it into a- boarding house or a hotel 1 On is it determinable by a casualty, a destruction by fire, instead of a voluntary destruction of their buildings 1 Must both be destroyed, or does the occasion cease when one is burnt or torn down ? These inquiries, and others like them, force themselves upon the mind, when it attempts to carry out the agreement stated in the bill, and to reduce it to those definite and specific terms which the parties would have employed, had it been drawn up in writing at the time of their negotiation.
Another and a vital point for the support of the bill, is that the acts relied upon were done solely with a view to the agreement, and were referable to it exclusively. This was well understood in framing the bill, for it is alleged positively that Wilder would not have caused the front of his house to have been set back from the line of Broadway, but for Yan Ranst’s agreement.
The principal witness on the point is Mr. Wilder. His testimony leaves it doubtful whether there was any agreement, other than those contained in the party-wall indentures; and such negotiations or agreement as he proves, deviate from the bill in this, that the front wall of any future edifices on his lot and Gordon’s, were to be set back, as well as those of the houses then about to be built.
He says that he caused his front wall to be placed three feet back from the line of Broadway, in conformity with the agreement or arrangement with Yan Ranst.
But so far from proving that he would not have set it back just as far, if Yan Ranst had wholly refused to agree to set his buildings on the same line ; or that he was placed in any different situation in consequence of that agreement, from what he would have been if it had never been made ; he states explicitly and voluntarily, that with Mr. Gordon’s assent, he should, with or without the assent of Yan Ranst, have erected his house back .from the street, as he did.
*97 It no where appears, nor is it alleged, that Mr. Gordon’s action in the matter, was in the least influenced by Van Ranst’s course. The church was next to his lot on the north, and was set back farther from the street than Wilder proposed ; so that it is probable that Gordon would have built on the proposed line on Wilder’s joining him, without any regard to Van Ranst. Be this as it may, it was for the complainant to prove clearly and unequivocally, that Wilder’s building on the line three feet from the street, was solely in consequence of Van Ranst’s agreement and the proof fails entirely to establish that fact.
On both grounds, the indefinite terms of the agreement, and the failure to prove that the acts of part performance which are relied upon, were referable solely to the agreement; I must hold that this court is not authorized to relieve the complainant.
The bill must be dismissed with costs.

 And Perry v.Fitzhowe, 10 Lond. Jur. R. 799; and 15 Law Journal, Q. B. 239. Now reported in 8 Q. B. R. 757.