# SUPREME JUDICIAL COURT,

FOR THE

## EASTERN DISTRICT,

### 1854.

---

## COUNTY OF WALDO.

---

### PITMAN *versus* POOR & *al.*

No permanent interest in real estate can be acquired by a parol agreement.

Thus, a parol license that the plaintiff or his grantor may build a dam on the land of another, to raise a reservoir of water for the use of his mill, will confer no right upon the plaintiff to *maintain* such dam after it is built, or *control* the water raised by means of it.

Nor can the owner of *such reservoir dam* use the water raised thereby for a mill *subsequently* erected, to the *detriment* of the *earlier* mill, for the reason that it was the *oldest* dam.

In regard to the *owner of the soil*, it may be considered as erected when he *first* appropriated it to his own use.

The owner of the first mill is entitled to the beneficial use of the water, as though no reservoir dam existed.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, J., presiding.

CASE, for diverting the water from plaintiff's mill, so that he lost the beneficial use of the same.

In 1826, one Hall Clements owned a mill-site on which he built a saw-mill. The year prior he obtained verbal per-

mission of the owners of the land above to build a reservoir dam, to accommodate the mill he was intending to erect. That dam was built, and the water thereof was under the control of Clements and plaintiff till 1844. About that time, the original mill having been burnt, another was erected on the same site. The plaintiff succeeded by deed to all the rights of Clements.

In 1844, defendants purchased of the owner, the land flowed by the reservoir dam and the soil on which it stood, and in his deed no reservation whatever was made. They also erected a mill between plaintiff's and the reservoir dam, and claimed to control the water in that dam, and did control it, until the commencement of this suit, and at times detained the water from plaintiff's mill.

The presiding Judge instructed the jury, that if Hall Clements obtained a license by parol from the owners of the soil to erect the reservoir dam, and thereby flow their land, and if in consequence of such license he erected said reservoir dam and built mills on the site where the plaintiff's present mill now stands, relying on such reservoir to supply the same, and the present plaintiff has his rights to the same, that neither the owner of the soil nor the grantee of such owner can divest him of his rights thus acquired to the reserved water.

The jury found, that if the plaintiff was entitled to the control of the reservoir dam, his damages were one hundred and twenty dollars; that if he had no such rights, but the title to the reservoir dam was in the defendants, and they had the right to control the same, that he had sustained no damage.

It was stipulated, that if the instructions were correct, judgment was to be entered on the verdict; but if erroneous, and the control of the reservoir dam is in the defendants, the verdict is to be set aside, and judgment rendered for defendants.

*Dickerson,* for defendants.

1. The license to Clements gave *him* no interest in the

land, and was revocable at the pleasure of defendants' grantor.

2. The conveyance of the soil to defendants was a revocation of the license, and vested in them the control of the water and of the reservoir dam, at least so long as plaintiff should suffer it to remain there. Defendants had no knowledge of the license and could not be bound by it.

3. Clements could not assign his interest to plaintiff.

4. If these acts of defendant's grantor were not a revocation; the actual possession taken by defendants and held for many years, is a revocation.

5. No consideration is pretended to have been paid for the parol license; showing that it was a mere naked authority.

6. The plaintiff's claim cannot be sustained without a virtual repeal of the statute of frauds.

That a license might be created by parol, the counsel cited, 3 Kent's Com. 452; *Ruggles* v. *Lassell*, 24 Pick. 187; *Emerson* v. *Fish & al.* 6 Maine, 200; *Pease* v. *Gibson*, 6 Maine, 81.

They are distinguished from easements. An easement cannot be revoked like a license. Coke on Lit. 9, § a; *Tentinam* v. *Smith*, 4 East, 109. See *Mansfield* v. *Whitney*, 15 Wend. 380; *Thompson* v. *Gregory*, 4 Johns. 81; *Cook* v. *Stevens*, 11 Mass. 533; *Fitch* v. *Seymour*, 9 Met. 467.

*Abbot,* for plaintiff.

TENNEY, J. — Hall Clements, by a verbal permission of the owner of the land on which it stands, erected the reservoir dam, and in a year or two after, built upon the privilege now occupied by the plaintiff, a mill, which stood for several years, and was burnt. He afterwards rebuilt the mill on the same site, about eighteen years after the erection of the former mill. He conveyed his interest in the reservoir dam, which passed through several mesne conveyances to the plaintiff, who controlled the water in the same

till eight or nine years ago, the time when the mill was rebuilt, and when the defendants having acquired the title to the soil on which the reservoir dam stands, and to the land flowed, built a mill on their own privilege, above the mill of the plaintiff and below the reservoir dam; since which time, the defendants have controlled the water upon the land flowed and in the reservoir dam, and at times have detained it from the plaintiff's mill. This action is for this diversion of the water from the plaintiff's mill, for the use of that of the defendants', so that the plaintiff, as he alleges, has thereby lost the beneficial use of the same.

The jury were instructed, that if the reservoir dam was erected under a parol license from the owner of the soil, and thereby to flow his land, and the person having the permission built mills on the site, where the plaintiff's mills now stand, relying on this dam for a supply of water, and the plaintiff has the rights of the one who built the dam, that neither the owner of the soil, nor his grantees, can divest him of the right thus acquired to the reserved water.

It is said, in 3 Kent's Com. 452, "that the modern cases distinguish between an easement and a license. A claim for an easement must be founded upon grant, or by deed, or writing; or upon prescription, which pre-supposes one, for it is a permanent interest in another's land, with a right at all times to enter and enjoy it; but a license is an authority to do a particular act, or a series of acts, upon another's land, without possessing an estate therein. It is founded in personal confidence and is not assignable."

In *Cook* v. *Stearns*, 11 Mass. 536, the Court say, "a license is technically an authority given to do some act, or a series of acts on land of another without possessing any estate in the land. Such as a license to hunt in another's land, or to cut down a certain number of trees." "But licenses, which in their nature amount to the granting of an estate for ever so short a time, are not good without deed." If the defendant have a license from the former owners of the plaintiff's close, to make the bank, dam and

canal in their land, this extended only to the act done, so as to save him from their action of trespass, for that particular act, but it did not carry with it an authority at any future time, to enter upon the land; and transferring the land to another, or even leasing it, without any reservation, would of itself be a countermand of the license.

The same doctrine is held by this Court, in *Emerson* v. *Fisk & al.*, 6 Greenl. 200 and 205, both as to the legal definition of a license to do acts upon real estate, and its revocation by an attempted transfer.

The Court, in *Mumford* v. *Whitney*, 15 Wend. 380, review many of the cases upon this subject, in which the doctrine of some is in conflict with that of others, and it is said by SAVAGE, C. J., who delivered the opinion of the Court, "I shall not undertake to reconcile these various cases. It is evident the subject has been understood very differently by different Judges. But in this all agree, that according to the statute of frauds, any permanent interest in the land itself, cannot be transferred, except by writing. Much of the discrepancy may have arisen from the different ideas attached to the word *license*. If we understand it as Chancellor KENT defines it, it seems to me, there can be no difficulty." "If A agree with B that B may build a dam upon the land of A, * * * * if it is to be permanent, or any thing more than a temporary erection, such an agreement is not technically a license. The object of A is to grant, and of B to acquire an interest, which shall be permanent; a right not to occupy for a short time, but as long as there shall be employment for the water power to be created. Can such an interest, such a right, be thus created?" The answer to this question is given in the language of Mr. Sugden, when speaking of the case of *Wood* v. *Lake*, Sug. 4, cited in 1 Phil. Ev. 354; "It appears to be in the very teeth of the statute, which extends generally to all leases, estates and interests."

When these principles are applied to the case at bar, the plaintiff has acquired no such rights as he claims. It

is manifest that the interest, which was intended by Half Clements to be obtained by the reservoir dam, was a permanent interest and right, which could not legally pass to him without an agreement in writing; and his attempt to assign this supposed interest and right was perfectly nugatory.

The plaintiff was not entitled to control the reservoir dam, according to the facts which the jury must have regarded as established under the instructions which they received. In addition, however, to the verdict for the plaintiff, the jury found, that if the plaintiff had no such right as was the basis of the verdict for him, but the title was in the defendants, and they had a right to control the reservoir dam, no damage was sustained.

By the agreement shown in the report, to entitle the defendants to a general verdict, the instructions to the jury must be decided to be erroneous, and it must be decided that the defendants have the legal right to control the reservoir dam. By this control, we understand the power to use it to raise a reservoir of water, without any regard to injury, which the plaintiff may sustain, by its detention, in the operations of his mill.

It does not follow from want of right in the plaintiff to *control* the reservoir dam, that he may not maintain an action against the defendants, for diverting the water from his mill, to his loss, for the purpose of detaining and using it for theirs. The title to the soil on which the reservoir dam stands, and to the land flowed by it, may not of itself be a sufficient defence to such a claim.

It is true, according to the facts in testimony, the reservoir dam was built before the erection of any mill or other dam, but by the permission of the owner of the land, where it was placed, and for the use of the mill designed to be erected, and which was built soon after, in pursuance of the design, upon the plaintiff's privilege. This dam, by being first in order of time, may not now, under R. S., c. 126, § 2, protect the defendants' mill from an injury, which may be

occasioned by the dam that was built originally, or may have been built since, on the plaintiff's site, for the direct use of his mill. But on the other hand, this site, and the mill thereon, may be considered, when all the evidence shall be presented, as having the right of the statute protection, if the site was first occupied by a mill lawfully erected upon it, and used, and the right to maintain the mill was not lost or defeated by abandonment, or otherwise.

The reservoir dam does not appear to have been erected for the purpose of detaining water for the use of any mill, excepting such as should be built on the plaintiff's privilege. It was always used exclusively in connection with the mill there standing, till the erection of the mill on the defendants' privilege long afterwards. As a dam to be used for the benefit of their mill, its origin may be considered no earlier than its first appropriation to its present purpose, and it may be treated in the same manner as it would be, if it had been then erected.

The plaintiff is entitled to the same free use of the water, which he would have, if there was no reservoir dam, and no more.

The instructions not being strictly correct, the verdict for the plaintiff must be set aside. But as the entire right of controlling the dam, does not appear from the facts reported, to be in the defendants, they are not entitled to a general verdict, and the case must be sent to another jury.

SHEPLEY, C. J., and HOWARD and HATHAWAY, J. J., concurred.