Freeman v. Headley.

PEARSON A. FREEMAN v. SAMUEL T. HEADLEY.

1. A purchaser in possession of lands under a contract to purchase, whether written or verbal, is a tenant at will, for the purpose of sustaining an action on the case in the nature of waste for destruction, committed while in such possession.

That there may be a remedy in equity is not sufficient; the law should provide a direct remedy for such a wrong.

A remedy in equity may depend upon many circumstances that may render it entirely inefficient. And for this purpose any entering upon and holding premises by permission of the owner, and subservient to

his title, should be held to constitute a tenancy sufficient to maintain this action.

2. A permission or license to take down a house given on a condition which is not performed, does not justify the taking down the house. The license is a plain matter of agreement not prohibited by any law, nor is it contrary to good morals, nor to the policy of any part of the law of the state.

3. The parol sale of the premises is clearly void by the statute of frauds. The question here is not as to the sale, but as to the tearing down the buildings; a parol license to tear them down would have justified the act, if there had been no talk of a sale.

4. In relation to the gore, mentioned in the charge, there was no proof that the plaintiff had agreed to convey the gore, or that he had made any representations concerning it, which the defendant could complain of. The title to the gore was immaterial to the controversy, and the charge of the Circuit Court was correct.

On writ of error to the Supreme Court.

For case and opinion of the court, *vide* 3 *Vroom* 225.

The Supreme Court reversed the judgment of the Circuit Court of the county of Morris, upon exceptions taken to the charge upon the trial. The action brought by Freeman was an action on the case for tearing down and taking away the buildings on his premises, of which Headley was in possession under him. Some of the counts stated this possession to be as tenant at will, and at sufferance, and others to be under a parol contract to purchase; a count in trover for the materials was also added. The plea was not guilty. At the trial it appeared that the plaintiff had purchased at sheriff's sale a lot occupied by two shops, which was sold as the property of James L. Robeson, who had formerly occupied it; it adjoined upon the west, lands of William J. Easton. Shortly before the sheriff's sale, and before the judgments under which the sale was made, Easton had conveyed to Robeson a small gore of this adjoining property extending from the street along the west side of the lot in the sheriff's deed, to a point in the west line, so as to leave the rear of the lot adjoining the residue of Easton's lands.

This gore was not levied on or sold, and it did not appear that the plaintiff had any knowledge of the conveyance of the gore, until after the tearing down of the buildings.

In February, 1861, the plaintiff agreed by parol to sell the lands in the sheriff's deed to the defendant, for one thousand two hundred dollars. The defendant, after making the bargain, took the sheriff's deed and had a deed prepared from it, to him to be executed by the plaintiff and his wife, and handed it to the plaintiff to execute. The lot was purchased for the purpose of building upon it livery stables to extend upon Easton's lot, which the defendant proposed to purchase for that purpose, and this object he made known to the plaintiff during the negotiations. When the defendant first inquired of the plaintiff as to the property, he asked him if he owned the Robeson property joining the Easton property, and. the plaintiff answered that he did.

After the deed prepared was handed to the plaintiff, and before it was delivered, the defendant was called away from home, and authorized an agent, if he could procure plaintiff's consent, to take down and remove the buildings. The plaintiff, according to his own testimony, upon the agent representing that defendant would be back in a day or two, and would then carry out the contract, told the agent that he had no objections—that it would make no difference *if defendant fulfilled.* After the taking down of the buildings, and after the return of the defendant, it was discovered that the gore had been sold from the Easton property, and that it was not included in the sheriff's deed. And the defendant refused to comply with his contract. The plaintiff told the defendant that he did not know of the conveyance of the gore, and said that he never sold that but only the land in the sheriff's deed. Defendant said the land would be worth nothing to him without it. The plaintiff, as he says to avoid difficulty about the sale, afterwards, in July, purchased the gore for fifty dollars, and then offered to convey the whole, but the defendant then refused to take it, on the ground that

it was too late, as he had made other arrangements, and did not now want the property.

The court charged the jury that if the plaintiff gave permission to the defendant to take down the buildings on the understanding sworn to by the plaintiff, that is, on condition that the defendant should take the property under the agreement, the plaintiff must recover for such taking down.

The court further charged that the title of the plaintiff to the premises in question, or to any part thereof, could not be disputed in this action, and that it was immaterial in this action whether the plaintiff had title to the gore or wedge or not. To these parts of the charge the defendant excepted, and upon these exceptions the Supreme Court reversed the judgment.

For plaintiff in error, *J. Vanatta.*

I. The court below treated the case as an action of trespass, and applied to it the rigid rules of that action. In this they erred. 1 *Chitty's Pleading* 491.

It is quite true that we cannot hold defendant as a trespasser. We do not seek to do so.

In *The Six Carpenters' Case*, the court held that the defendants could not be made liable as trespassers, but it was ruled that they were liable to pay for the wine and bread which they had consumed and had not paid for.

The opinion of the court goes upon the ground that Headley had permission from the plaintiff to do what he did do—that is, to tear down the buildings without paying for them.

Just there, I conceive, was the error. It is a misconstruction of the permission which was given.

In such cases the license must be construed reasonably and consistently with the rights of both parties. *Cooper* v. *Stewart,* 9 *Johns.* 331.

These buildings yielded a rent of one hundred and seventy-five dollars a year to Freeman.

It is not to be supposed that he would consent to the de-

struction of those buildings, except upon the understanding that he should be paid for them.

Nor can it be reasonably supposed that Headley had, or could have had, any different understanding.

Every count of the declaration avers that the demolition was without the consent of the plaintiff.

The judge charged the jury, in effect, that if they believed what Freeman swore to, there was no consent.

The consent given was conditional.

" *I told him it would make no difference if he fulfilled.*"

That was, in effect, saying, if you pay, you will have license; if you do not pay, you will be without license.

The circumstances show that that was what was meant by Freeman, and understood by both parties.

It was either that, or else Freeman had the buildings torn down for his own purposes.

The jury negatived the latter view.

The court puts the case as if he had given leave to take down the building without requiring pay for it.

The license really was to take it down if he would pay for it.

Where the action is not trespass, but merely to recover the value of the building, Headley cannot make the license available without showing that he paid, because that was the condition of the license.

We do not ask to punish him for exercising the license, but we do ask him to pay the consideration for which the license was granted.

It was a license for which a consideration was to be paid. If not, it was no license at all.

The defendant repudiates the payment of the consideration; therefore, he has no license.

The license was an entirety. Unless he shows himself within its terms—all its terms—he cannot use it. He cannot use part and repudiate part.

If there was a condition to it, he must show that he complied with that condition; and if he has not complied, there is no license. *Grigson* v. *Ruck,* 4 *Q. B.* 737; *Roper* v.

*Harper*, 4 *Bing.* 20 ; *Woodworth* v. *Kissam*, 15 *Johns.* 186 ; *Bridges* v. *Blanchard*, 1 *A. & E.* 536 ; *Mumford* v. *Whitney*, 15 *Wend.* 380.

Where parties have acted upon a parol contract, looking to a transfer of title to real estate, and paying therefor, and damage ensues by non-performance of the parol agreement, those damages may be recovered in an action. *Jack* v. *McKee*, 9 *Barr* 235 ; *Hastings' adm'rs* v. *Eckley's adm'r*, 8 *Barr* 194.

The rule is this : where the consideration on the one side has failed, and the contract is at an end, the consideration rendered by the other side can be recovered as damages. *Gillet* v. *Maynard*, 5 *Johns.* 85 ; *Smith* v. *Adm'rs of Smith*, 4 *Dutcher* 208 ; *King* v. *Brown*, 2 *Hill* 486 ; *Mann* v. *Pyne*, 3 *Bing.* 285.

II. The alleged error in charging that it was immaterial whether the plaintiff had title to the gore or not.

This was, if an error at all, a harmless one.

The plaintiff's deed did cover the gore in question.

The gore is said to have been on the east side of Easton's lot.

James L. Robeson had a deed for that gore. *Den, ex dem. Steelman,* v. *Steelman,* 1 *Har.* 68 ; *Ayers* v. *Van Liew,* 2 *South.* 765 ; *Campfield* v. *Ely,* 1 *Green* 151 (*certiorari*); *Smith* v. *Ruecastle,* 2 *Halst.* 357 ; *Schenck* v. *Cottrell,* 1 *Zab.* 5 ; *Jackson* v. *Miller,* 1 *Dutcher* 93 ; *Graham* v. *Whitely,* 2 *Dutcher* 254 ; *State* v. *Johnson,* 2 *Dutcher* 313 ; *Same case,* 5 *Dutcher* 454.

For defendant in error, *H. C. Pitney.*

1. The action is really brought to recover damages for a breach of a parol contract to purchase lands, void under the statute of frauds, but enforceable in equity by reason of its part performance.

Plaintiff has mistaken his forum. Until defendant was in default for not taking the title, plaintiff had no cause of action against him.

Freeman v. Headley.

The act complained of was lawful when done.

The transaction is this:

Plaintiff says to defendant: "If you will take the title and complete the purchase at a *future* day, you may *now* enter and remove the building;" defendant answers, "I will do so."

This is a contract.

Defendant did not agree to take the title *before* the entry and destruction of the building, but at a *future day*.

Plaintiff says, "I give you permission and license to enter and destroy *now* in consideration of your *promise, agreement, contract* to complete the purchase at a *future* day.

It is just the case that always happens when a purchaser is let into possession pending a treaty of purchase, or before the completion thereof, and then fails to complete.

The action is a mere *experiment;* an attempt to evade the statute of frauds and maintain in a court of law an action which that statute declares in the plainest terms shall not be maintained.

If it succeeds in this case, I respectfully submit it will be by *legislating* to meet the supposed hardships of a particular case.

The province of this court is to *declare* not to *change*, to *preserve* not to *destroy*, the law.

The *entry* of the defendant was as much a trespass as the *destruction* of the building.

Hold defendant liable in this case, and you hold him a wrong-doer for his bare entry, and that every man who enters on land under a contract to purchase and pay for it at a future day, is a trespasser from the beginning if he fails to complete the purchase.

Every wrong is not a *right invaded;* every *injury* is not actionable at *law*.

Whenever it would be *fraudulent* and *unjust* for a party to recede from a parol contract of this kind, *equity* will enforce it against him. He has no remedy at law.

2. The action for waste will not lie, because the relation of landlord and tenant did not exist.

The first, third and fourth counts of the declaration are for waste, and are founded on a tenancy ; the absence of the relation of landlord and tenant, is of itself a complete answer to them. *Brewer* v. *Conover,* 3 *Harr.* 215 ; *Den* v. *Drake,* 2 *Green* 529, 531 ; *Smith* v. *Stewart,* 6 *Johns. Rep.* 46 ; *Taylor's L. & T.,* § 25 ; *Stauffer* v. *Eaton,* 13 *Ohio* (*Staunton*) 322, 333. The principles involved in the decision of this last case cover the case before the court.

Independently, then, of any consent or license, waste will not lie against a purchaser in possession under a contract of purchase.


3. The action will not lie on the special circumstances of the case, because the destruction complained of, was done by the consent and license of plaintiff.

These *special circumstances* are attempted to be set out in second and fifth counts of the declaration.

The fifth count is framed in *assumpsit,* and is founded plainly on the refusal to fulfill the contract.

All the counts allege affirmatively that the destruction and amotion of the buildings were done *against the plaintiff's will, and without his leave or license.*

Now the judge charged the jury, and put the case on the ground that the plaintiff could maintain his action on the special circumstances of the case for the destruction of the building, *notwithstanding it was done by consent and leave and license.*

The general rule is well established that a license to do the act complained of, is a complete defence, provided it be done before the license is revoked. 1 *Hilliard on Torts* 173, and cases cited ; 1 *Wash. on Real Prop.* 399 ; *Miller* v. *Auburn & Syracuse R. R. Co.,* 6 *Hill, N. Y.,* 61–4 ; *Pierrepont* v. *Barnard,* 2 *Selden, N. Y.,* 279–286 ; *Pratt* v. *Ogden,* 34 *N. Y.* (7 *Tiffany*) 20 ; *Syron* v. *Blakeman,* 22 *Barb.* 336 ; *Dubois* v. *Kelly,* 10 *Barb.* 507 ; *Selden* v. *Canal Co.,* 2 *Tif-*

*fany* 639; *Stevens* v. *Stevens*, 11 *Metc.*, *Mass.*, 251; 4 *Foster N. H.* 176.

The true test is, *could the action have been maintained the day after the building was removed, and before any failure to perform?*

The character of the act must be determined by *cotemporaneous* sayings and doings and circumstances.

Subsequent occurrences cannot alter its intrinsic qualities.

4. A breach of a condition subsequent cannot make a party a wrong-doer by reason of any act done before such breach.

Plaintiff says that the license set up by defendant, was *upon condition*. If so, we answer, it was a condition *subsequent*. *Pratt* v. *Ogden, supra*, is in point.

Until the breach or happening of the condition, the position of the party is in all respects the same as if there were no condition.

In cases of estates *granted* or *devised* upon condition subsequent, the estate vests *immediately*, and the grantee or devisee has a *complete title*, subject to be defeated, according to the terms of the condition, but until the condition fails, his estate is as good for all present purposes, as if there were no condition annexed to it. 1 *Bacon's Abridgment, title " Condition," Letter I, p.* 640; 2 *Black. Com.* 154.

An estate upon condition subsequent, is simply a defeasible estate. Even after condition broken, the estate remains good until the reversioner does some act signifying his intention to take advantage of the defeasance, and the happening of the event, and the claim of forfeiture do not make the tenant in fee defeasible, a wrong-doer prior to such claim.

The doctrine that a person acting under the authority of an individual, as distinguished from the authority of law, will not be made a trespasser *ab initio*, for any subsequent abuse of such authority, is well established. *The Six Car-*

*penters' Case,* 8 *Coke* 290 ; 1 *Smith's L. C.* 62 ; *Allen* v. *Cro-foot,* 5 *Wend.* 506.

The case of *Mumford* v. *Whitney,* 15 *Wend.* 380, does not apply.

It abundantly appears that the *condition* in that case was *precedent* not *subsequent.* A license that A may build, maintain, and fill with water, *continuously* and *permanently* a mill dam, upon *condition* that he will also erect and maintain a certain wall to protect against back water from that dam, is a license upon *condition precedent;* the letter and spirit of the condition being that the erection of the protecting wall, should precede the flow of the back-water. In the present case the condition that defendant should take the title is necessarily *subsequent,* for the plain reason, that if the defendant must take the title *before* he destroyed the buildings there would be no occasion for any license for the act of destruction.

5. The failure to complete the purchase was a mere *non-feasance,* and will not make the defendant a wrong-doer by *relation.* *Dumont* v. *Smith,* 4 *Denio* 320 ; 1 *Smith's L. C.* 65–67 ; *notes to the Six Carpenters' C., 3d point; Bonnel* v. *Dunn,* 5 *Dutcher* 436, 438 ; not paying the money and taking the title is *not doing.*

This case is really ruled by *Bonnel* v. *Dunn.* The officer's right in that case to seize the goods was subject to his duty to set off two hundred dollars worth of property to the family ; his levy was *conditional,* and liable to be defeated by failure to set off two hundred dollars ; but his failure so to do, did not make him a trespasser in making a levy. To the same effect is *Morton* v. *Copeland,* 7 *Scott;* 16 *C. B.* 517.

6. The defence of failure of title was available in this case. Defendant was not estopped from denying plaintiff's title.

Plaintiff could not complain of defendant for refusing to take a bad title. *Rutan* v. *Hinchman,* 1 *Vroom* 255 ; *Smith* v. *Smith,* 4 *Dutcher* 217.

The judge *took the question of title away from the jury*, and charged them, " that the title of plaintiff to the premises in question, or to any part thereof, cannot be disputed in this action, and that it was immaterial in this action, whether the plaintiff had title to the gore or wedge of land or not."

This part of the charge is clearly indefensible.

The judge did not put the case on the ground that the gore or wedge was not within the contract of purchase: *he did not submit any such question to the jury.*

There was abundance of evidence from which the jury might have inferred that the gore was within the contract. It was treated by the parties and the court, as within the contract, and the judge went on the ground of a *tenancy*, and that defendant as tenant could not dispute his *landlord's* title.

7. The motion to non-suit should have prevailed, and the exception to its refusal was well taken.

The point of motion was, that the plaintiff was seeking to recover in *tort*, on a cause of action founded in contract.

The counts in *tort* cannot in anywise be holpen by the contract.

The case must stand or fall without reference to the contract.

The rule is thus laid down by Sergeant Williams in note to *Cabell* v. *Vaughan*, 1 *Wm. Saund.* 291 ; cited in *Masters* v. *Stratton*, 7 *Hill, N. Y.*, 103.

The course of the pleading in this case shows the difficulty the pleader met with in attempting to turn *contract* into *tort*.

One count is in *assumpsit*, one in *trespass*, one in *trover*, and two or more in *waste*.

THE CHANCELLOR. The defendant was in possession of the premises under the plaintiff, in such manner as to make him a tenant at will, for the purpose of sustaining an action

on the case in the nature of an action of waste. He was not a tenant for the purpose of sustaining an action for use and occupation, at least such is the weight of authority, although even on this point there is a serious conflict of authority, but the decision of the Supreme Court in the case of *Brewer* v. *Conover*, 3 *Harr*. 215, must place that question at rest in this state.

The dictum of Justice Nevius in that case, that the relation of landlord and tenant does not exist in case of occupation under contract of sale, cites as authority, and is based upon the case of *Smith* v. *Stewart*, 6 *Johns*. 46.

In that case, which was an action for use and occupation against a purchaser who had occupied under a contract for sale not carried out, the court remark : " The better opinion is that he never was *strictly* a tenant, and never entitled to notice to quit, nor liable to distress, nor to an action of *assumpsit* for rent. This opinion is not inconsistent with the idea that for certain purposes he may be considered a tenant or in the situation of a tenant, even if it is not viewed as countenancing that doctrine. He may not be a tenant for the three purposes named, and yet for the purpose of being prohibited when called to surrender, from disputing the title of the person from whom he derived possession, and for being liable for unauthorized spoliation when thus lawfully in possession, he may well be considered as a tenant.

In *Suffern* v. *Townsend*, 9 *Johns*. *R*. 35, it was said that a parol contract to convey is not a license to enter, and that if a license had been shown, the defendant could not have been in possession in any higher character than *as tenant-at-will*.

In the case of *Jackson* v. *Miller*, 7 *Cow*. 747, the Supreme Court of New York, in a well considered opinion delivered by Chief Justice Savage, regard a person in possession under a contract to purchase not carried out as a tenant-at-will, but as not entitled to notice to quit, which was the question in that case, and say, " the general rule here is, that tenancies-at-will are to be considered as tenancies from year to year, merely for the sake of a notice to quit; but this

seems to be subject to the exception of a tenancy-at-will created by an entry under a contract to purchase. It seems reasonable that it should be given in all cases where the tenant occupies, with the permission of the landlord, for an indefinite period. But the case of a contract to sell has been uniformly considered an exception." The judgment of the court is not put upon the ground that there was no tenancy, and, therefore, no notice needed, but on the ground that this case was an exception to the rule requiring notice to a *tenant*.

In the case of *Howard* v. *Shaw*, 8 *M. & W.* 118, Barons Parke and Alderson both expressly declare that a purchaser in possession, under a contract to sell, was a tenant-at-will, but was entitled to occupy the premises rent free, and, therefore, no action for use and occupation could be brought against him for that time, but only from the time when the contract was at an end. C. B. Abinger differed, and held that, until the contract was at an end, he could not be considered a tenant. But this latter opinion should, perhaps, be taken as applying only to the purpose then under consideration—his liability as a tenant for use and occupation.

The Supreme Court of Massachusetts, in the case of *Gould* v. *Thompson*, 6 *Metc.* 224, held that a purchaser in possession under a contract of sale not fulfilled, is a tenant of the vendor. In that case, it had been in a previous suit settled that the defendant was not bound to fulfill his contract, because the buildings on the premises had been destroyed by fire, upon which he had vacated the premises, and given notice that he would not accept the title. Yet the court held that until then he was tenant, and liable as such for use and occupation. The last part of the decision may be founded on some local or statute law, and is not law in this state.

Upon these authorities and upon principles applicable to the case, I have no difficulty in holding that a purchaser in possession of lands, under a contract to purchase, whether written or verbal, is a tenant-at-will for the purpose of sustaining an action on the case in the nature of waste, for de-

struction committed while in such possession. It would be a great defect if no remedy at law was provided for such destruction of buildings, which might be the greater value of the property, where the contract was not fulfilled because not in writing, or because of some neglect of the vendor to perform some stipulation in exact compliance with the terms of the contract. That there may be a remedy in equity is not sufficient; the law should provide a direct remedy for such a wrong; and the remedy in equity depends upon many circumstances that may render it entirely inefficient. And for this purpose any entering upon and holding premises by permission of the owner, and subservient to his title, should be held to constitute a tenancy sufficient to maintain this action.

That tenants-at-will were liable at common law, and independent of this statute, for voluntary waste like this, is conclusively shown by the cases cited in the opinion of the Supreme Court, by Justice Depue, in the case of *Moore* v. *Townshend*, decided at February Term, 1869,* in which the history and progress of the common and statute law with regard to waste, and the remedies for it, are shown with great learning and research.

These questions, although not referred to in the opinion in the Supreme Court, were involved in the first part of the charge excepted to, and were discussed upon the argument before us.

The defence relied upon is the license; and the position in the charge insisted on as error was fatal to that defence. The charge was, " that if the plaintiff gave consent, upon the condition that the defendant should take the property under the agreement, the plaintiff must recover." It was conceded that the defendant did not take the property, and the question of fact as to the agreement being upon that condition, was, by this charge, left fairly to the jury, for the jury were told in the same sentence, that if the buildings were taken down in the manner testified by the defendant, that the

* *Ante* 284.

plaintiff could not recover. The jury did not believe the defendant, and their verdict is binding here. The question of law that arises, then, is this: does a permission or license to take down a house, given on a condition which is not performed, justify the taking down of the house?

I fully agree with the Chief Justice, in the opinion that this action cannot be sustained, on the ground of the doctrine that the defendant, by his non-compliance, became a trespassers *ab initio*, on which the case was attempted to be placed in the Supreme Court. That doctrine clearly applies only to cases of authority given by law.

A license given upon condition that something else shall be done, is plain matter of agreement—a kind of agreement that is not void or prohibited by any law, nor is it contrary to good morals, nor to the policy of any part of the law of the state. There is no reason why courts should not give the effect to it which the parties intended, and no other effect. This question, or any other in the case, has nothing to do with the statute of frauds. The parol sale of the premises is clearly void by the statute; that is admitted, and it is not attempted to be enforced. The question here is not as to the sale, but as to tearing down the buildings. A parol license to tear them down would have justified the act if there had been no talk of a sale. If there were in such case a condition to the license, not involving the statute of frauds, the question would be the same as here. That is whether a license to do an act upon a condition which is not afterwards performed, will justify the act.

The peculiar and artficial doctrine of the common law. as to conditions precedent and subsequent in estates in lands, does not apply here; it has never been applied, except as to titles to real estate.

There are many cases of license given on condition, in which there is no promise to perform the condition, or the promise is given under circumstances which, as in this case, make it void at law. A tenant may ask permission of his landlord to take the roof off his house and put on an orna-

mental French roof at his own expense, the landlord may by letter give permission on condition that he shall put on the new roof. No promise is made by the tenant, or the tenant is an infant or *feme covert*. It is absurd—it is a libel on the law—to hold that there is no remedy against the tenant who removes the roof, leaves the house unprotected, and to become completely ruined by storms. This must be the result if the license is held valid to justify the removal because it is not yet forfeited by the breach of the condition. The doctrine applied by the Supreme Court to the plaintiff in this case, "that if he has no contract by force of which he can be reimbursed his loss, it is a position of his own choosing," has not been applied in other cases similarly situated. A purchaser who pays money on a parol contract to convey lands, which the vendor refuses to carry out, can recover the money back; and if a tenant puts on the lands improvements by permission of his landlord, under a void promise to convey or devise, he may recover such money back, even if he neglects to secure himself by a written contract, as required by the statute of frauds, although, in such case, his neglect is a contravention of the settled and declared policy of the law. This is the very point decided in *Smith* v. *Smith's administrators*, 4 *Dutcher* 208.

The doctrine recognized in that case, that where a vendee in possession, of his own motion, and not at the instance of the vendor, makes improvements, he shall not recover if the contract of sale falls through, is without doubt correct; but it is placed on the ground that they were made by the plaintiff for his own benefit. Here the act was not done by the plaintiff, nor was it for his benefit, but by the defendant for his own benefit, and at his own risk.

There are no cases or decisions which, in my opinion, sustain and establish the doctrine that a conditional license is a justification of a *tort*, although the condition be not complied with. If such is the established doctrine of the law, we must adhere to it, whatever the consequences.

But there has never been any such rule established. The

Freeman v. Headley.

clear weight of authority, so far as any is produced, is the other way.

In *Mumford* v. *Whitney*, 15 *Wend*. 380, a license had been given to build a dam, on condition that the land of plaintiff should be protected by a wall. The court say: "Whether license had been given was the point of inquiry; and if the plaintiff could prove that the license was *conditional*, and that the condition had not been performed, then he was absolved from the license; or rather, the license was never operative, because the condition had not been performed." This doctrine is not overruled by the case of *Pratt* v. *Ogden*, 34 *N. Y.* 20, but is rather confirmed by it. The affirmance in that case is put upon the ground that there was no proof whatever in the case that there was any condition annexed to the parol license under which the defendants justified; the error was the refusal of the court to charge upon such license. In the opinion it is said: "The fundamental vice in these requests is the assumption that the license was upon any condition whatever. There was no proof in the case which warranted such inference. It was certainly competent for the plaintiffs to have shown that the license given was upon a condition, and then further to show, that that condition had not been performed; the case would then have been brought within the rule laid down in *Mumford* v. *Whitney*," from which is quoted the passage above extracted. "A court can never be called upon to charge upon an assumed state of facts not shown at the trial. The judge *therefore* properly refused to charge as requested."

This was the ground of the decision of the case, in which the doctrine in *Mumford* v. *Whitney* is expressly approved. There are in the opinion, afterwards, speculations of the judge, not necessary to the decision, (and which may or may not have been approved of by the other judges,) as to the effect of a violation of the condition of the doing the injury, in which he holds that no damage could be recovered for acts done before the license was forfeited. And he bases these speculations upon the doctrine in case of a license re-

voked, which justifies all acts done before revocation. The judge was evidently misled by a seeming semblance, which has no existence for the object under consideration. Every just mind of sound sense would say that a license which, by its terms or by its legal effect, was revocable at the pleasure of him who gave it, should justify the acts done under it, until it was revoked. And, on the other hand, that a license which was given on the express condition that something should be done by the licensee on his part, whether before or after he availed himself of it, should be no justification of the act, unless the condition should be performed.

The rule in one case is right and just; in the other, would be wrong in itself and produce great injustice. There is no analogy between the cases, and the reasoning concerning them, which has not the weight of a decision, is of no value except such as depends upon its soundness.

My conclusion, therefore, is, that the first part of the charge of the Circuit Court was correct.

The second part of the charge excepted to contains two distinct propositions. The first, that the title of the plaintiff to the premises in question, or to any part thereof, cannot be disputed in this action. The second, that it was immaterial whether the plaintiff had title to the gore or not.

The question as to the first part, so far as relates to all the premises but the gore, it seems to me is disposed of by the consideration which guided the decision of the Court of Appeals in New York, in the case of *Pratt* v. *Ogden*, to wit, that there was no evidence in the case to which the charge could apply. The plaintiff being in possession under the sheriff's deed, was to be deemed the owner, unless some evidence was given to affect his title. There was none; and as to that the result could not have been different if the charge had been the other way. And it is too well settled in this state to be questioned, that an error which is immaterial is no ground for reversal. *Smith* v. *Ruecastle*, 2 *Halst.* 357; *Den, Steelman* v. *Steelman*, 1 *Harr.* 66; *Jackson* v. *Miller*,

Freeman v. Headley.

1 *Dutcher* 93; *Graham* v. *Whitely*, 2 *Dutcher* 284; *Johnson* v. *State, Ib.* 313; *Schenck* v. *Cottrell*, 1 *Zab.* 5.

With regard to the gore, the case is different. The plaintiff did not own that at the contract, the license, or the destruction of the building, or until July, 1861. It is not necessarily included in the general boundaries in the sheriff's deed, which are satisfied by the fact that part of the west boundary was Easton's land, and the boundaries specified, and the reference to the two deeds by which it had been conveyed to the defendant in execution, are not *falsa demonstratio* in the sense in which that term is applied in the maxim, but are intended as the designation of the property conveyed.

But this gore was no part of the property about which the negotiation for the sale had been had, or the consent to enter and pull down had been given; it does not appear in the case until after the buildings had been taken away. The plaintiff proposed to sell the property conveyed in the sheriff's deed. The defendant so understood his offer, for he took that deed and prepared from it the conveyance to himself; this was done before the license.

The plaintiff and defendant may have believed, and no doubt both did believe, that Easton's property joined the plaintiff, but the deficiency was not in the plaintiff's land, but in Easton's; a gore had been sold off from Easton's property, so that the two did not join. The plaintiff made no representation about the property that would have affected his right had there been a written contract to purchase, and had this suit been on that. The answer to the question whether he owned the Robeson property joining the Easton property is the only thing that can be construed into a representation. The answer was true, both literally and substantially, for the object for which it was asked. The question was only intended to designate the property which was sold to him at the sheriff's sale, and which defendant knew he had once purchased. It did join the Easton property, but not all the way to the front. There was no evidence from which any fraud or misrepresentation could be

Freeman v. Headley.

inferred on part of the plaintiff, or that could have been left to the jury for that purpose, and nothing which could make the title to the gore material in any suit between the parties. That the plaintiff, subsequent to the destruction of the shops, bought the gore for fifty dollars, and offered to convey it to the defendant, is no proof that he had agreed to convey ; he testifies that he did it to avoid controversy, as he hoped it might end the difficulty.

If, then, there was no proof at all that the plaintiff had agreed to convey the gore, or that he had made any representation concerning it which the defendant could complain of, the title to the gore was immaterial to the controversy, and the charge of the Circuit Court was correct. It was of no more consequence to this controversy than a defect in the title of the Easton lot which the defendant expected to buy, which defect would have defeated his object, although that object was known to the plaintiff.

Nor could the charge upon the question of title have any effect as to the damages. The damages could only be those to the lot in the sheriff's deed, on which the shops stood. The title to these, by presumption of law, from possession under the sheriff's deed, must be taken to be in the plaintiff until some evidence is given to raise a doubt upon it. And even if the charge is erroneous in this respect, it could do no injury, and therefore is no ground for reversal.

The judgment of the Supreme Court must be reversed, and that of the Circuit Court affirmed.

*For affirmance*—The CHANCELLOR, SCUDDER, CLEMENT, KENNEDY, OGDEN, OLDEN, VAIL, WALES.    8.

*For reversal*—DEPUE, VAN SYCKEL, WOODHULL.    3.